Vern F. CHUMNEY and Marjorie Ann Chumney, Plaintiffs-Appellants,

v.

Roy C. NIXON, C. Harris Cole, Edward A. Rankin, Gene L. McDaniel, William R. Hicks, Murray E. Stern, Regency Travel, Inc., and Braniff International Airlines, Inc., Defendants-Appellees.

No. 77–1370.

United States Court of Appeals, Sixth Circuit.

Argued April 16, 1979.

Decided Jan. 24, 1980.

James F. Schaeffer, Schaeffer & McDougal, Memphis, Tenn., for plaintiffs-appellants.

W. Carlton Barnes, Hanover, Walsh, Barnes & Jalenak, Memphis, Tenn., for Nixon, Cole and Rankin.

Donald W. Schwendimann, James D. Causey, Memphis, Tenn., for McDaniel and Hicks.

J. Woodward Norvell, Nelson, Norvell, Wilson, McRae, Ivy & Sevier, Alan R. Strain, Memphis, Tenn., for Stern Regency Travel, Inc. and Braniff International Airlines, Inc.

Before EDWARDS, Chief Judge, KEITH, Circuit Judge, and PECK, Senior Circuit Judge.

EDWARDS, Chief Judge.

Plaintiffs-appellants Chumney, man and wife, appeal from dismissal of their complaint. The District Judge before whom this matter was argued, after considerable deliberation, granted defendants-appellees' motions to dismiss. He reached his final conclusion on motion to reconsider or rehear his dismissal, at which point he held that "the claims could not be said to arise under this criminal statute." The statute referred to, 18 U.S.C. § 113, is a criminal statute which provides penalties for personal assaults on any aircraft within the special aircraft jurisdiction of the United States.

This is a strange case on the alleged facts. It is also a difficult one as far as legal concepts are concerned.

### THE ALLEGATIONS OF FACT

The facts alleged which may be digested from plaintiffs' complaint and amendments thereto, are as follows.

Chumney claims that, while he and his wife were returning from a Memphis, Tennessee, Shrine Temple charter flight to Rio de Janeiro, a physical assault on him by defendant Nixon, the mayor of Shelby County, Tennessee, and the other individual defendants, broke some of his teeth and resulted in other serious, possibly permanent injuries. At the time of the assault, the complaint alleges that the aircraft was approximately 2½ hours out of Rio de Janeiro en route to Memphis, Tennessee. At oral argument, the parties appeared to agree that at the time concerned, the aircraft was at 29,000 feet over the Brazilian jungle. Judicial notice of a world map strongly suggests that plaintiffs' pleading should be so construed.

The motivation for this assault is alleged by Chumney to have originated in the fact that Nixon had once been sheriff of Shelby County and that Chumney, as a lawyer, had represented one of Nixon's deputies who had been fired by Nixon and had succeeded in getting him ordered replaced on the job.

There are sundry other interesting facts alleged in the background of this involved case, such as that Mr. and Mrs. Chumney were using this charter flight for their honeymoon following their recent marriage, that the Chumneys were seated next to an unnamed man (who did not participate in this assault) whose "body odor" was highly offensive to the Chumneys and they were much offended by having to continue to sit near him, which complaint they had made known to the individual defendants who were officers of the Shrine Temple and that, as alleged by the complaint, Braniff Airlines served quantities of liquor to everybody concerned, including both the plaintiffs and the individual defendants, and failed to prevent the assault.

### THE LEGAL ISSUES

It is plaintiffs' contention that the individual defendants named as having participated in the assault clearly violated 18 U.S.C. § 113(d) and that their actions did damage which exceeded $10,000. They assert that their complaint arose under the laws of the United States as a civil action under 28 U.S.C. § 1331(a), the federal question jurisdictional statute. Plaintiffs' claims of causes of action against defendants Regency Travel, Inc. and Braniff Airlines are even harder to analyze and we shall deal with them last.

Plaintiffs in their tendered amended complaint assert that the United States District Court for the Western District of Tennessee, Western Division, has federal question jurisdiction under 28 U.S.C. § 1331 (1976) because defendants violated 18 U.S.C. § 113 (1976) which statute punishes assaults within the maritime and territorial jurisdiction of the United States. They claim the cited statute is made specifically applicable to the current fact problem by 49 U.S.C. § 1472(k)(1) (1976) pertaining to the special aircraft jurisdiction of the United States.

The federal question statute 28 U.S.C. § 1331(a) which plaintiffs rely upon reads:

(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the

Constitution, laws, or treaties of the United States.

18 U.S.C. § 113 reads:

Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows:

  *   *   *   *   *   *

(d) Assault by striking, beating, or wounding, by fine of not more than $500 or imprisonment for not more than six months, or both.

(e) Simple assault, by fine of not more than $300 or imprisonment for not more than three months, or both.

(f) Assault resulting in serious bodily injury, by fine of not more than $10,000 or imprisonment for not more than ten years, or both.

The applicability of 18 U.S.C. § 113 is established by the following statutory provisions:

18 U.S.C. § 7 reads:

The term "special maritime and territorial jurisdiction of the United States", as used in this title [18 U.S.C. § 1 et seq.] includes:

  *   *   *   *   *   *

(5) Any aircraft belonging in whole or in part to the United States, or any citizen thereof, or to any corporation created by or under the laws of the United States, or any State, Territory, district, or possession thereof, while such aircraft is in flight over the high seas, or over any other waters within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State.

49 U.S.C. § 1472(k)(1) reads:

(k)(1) Whoever, while aboard an aircraft within the special aircraft jurisdiction of the United States, commits an act which, if committed within the special maritime and territorial jurisdiction of the United States, as defined in section 7 of Title 18, would be in violation of section 113, 114, 661, 662, 1111, 1112, 1113, 2031, 2032, or 2111 of such Title 18 shall be punished as provided therein.

Finally, 49 U.S.C. § 1301(34)(d)(i) reads:

(34) The term "special aircraft jurisdiction of the United States includes—

  *   *   *   *   *   *

(d) any other aircraft outside the United States—

(i) that has its next scheduled destination or last point of departure in the United States, if that aircraft next actually lands in the United States;

■ We believe that these statutes clearly indicate that the Congress of the United States has undertaken to apply federal law to American (and other) aircraft while such aircraft are en route from an airport in the United States or are returning from a foreign country directly to an airport in the United States. The nature of 18 U.S.C. § 113 is that of a criminal statute designed to protect law abiding passengers on such an aircraft from either simple or felonious assault. The sanctions created by § 113 and made applicable to the subject circumstances by 49 U.S.C. §§ 1472(k)(1) and 1301(34)(d) are, however, purely criminal sanctions.

■ This leaves for our resolution the following question: Are plaintiffs entitled to a civil cause of action for damages against defendants which is derived from the federal criminal statutes described above and over which the federal courts would have jurisdiction under 28 U.S.C. § 1331(a)? The answer is anything but easy to come by. The District Judge accurately defined the question and answered it in the negative. Although it is certainly a close question, we disagree.

Civil actions derived from federal criminal statutes are not novel, albeit they are relatively rare. In the classic case, *Reitmeister v. Reitmeister*, 162 F.2d 691, 694 (2nd Cir.1947) Judge Learned Hand said as follows:

The first questions are whether the Communications Act of 1934, 47 U.S.C.A. § 151 et seq., imposes a civil, as well as a criminal, liability upon anyone who "publishes" a telephone message, and whether,

if so, the District Court had jurisdiction over the action. Although the Act does not expressly create any civil liability, we can see no reason why the situation is not within the doctrine which, in the absence of contrary implications, construes a criminal statute, enacted for the protection of a specified class, as creating a civil right in members of the class, although the only express sanctions are criminal.[2] In *Newfield v. Ryan*,[3] the Fifth Circuit has already implied as much as to § 605; and we too have so suggested ourselves in *United States v. Goldstein*.[4] That the District Court had jurisdiction, if there was a civil right, is too plain for debate.[5]

[2] *Parker v. Barnard*, 135 Mass. 116, 46 Am. Rep. 450; *Amberg v. Kinley*, 214 N.Y. 531, 108 N.E. 830, L.R.A. 1915E, 519; *Couch v. Steel*, 3 E. & B. 402. Restatement of Torts § 286.

[3] 91 F.2d 700, 703.

[4] [2 Cir.,] 120 F.2d 485, 490.

[5] § 41(1), § 41(8), Title 28 U.S.C.A.

The principle of deriving a civil action from a criminal statute which does not in terms provide for anything other than criminal liability is familiar to the law of torts. *See* Restatement (Second) of Torts § 286 (1965). *See also* § 288. It has also frequently been the subject of consideration by the United States Supreme Court. *See Wyandotte Transportation Co. v. United States*, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967); *J. I. Case Company v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) and *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). In the first two cases just cited, the Supreme Court did find it appropriate for a civil cause of action for damages to be implied from a federal statute imposing only a criminal penalty.

In *Cort*, which appears to be the most thorough consideration of the whole topic, relief in the form of a federal right of damages was denied, in part because the statute relied upon did not provide "a clearly articulated federal right in the plaintiff" and in part because the implication of a federal right to damages on the facts of that case would have intruded into an area traditionally committed to state law without aiding the main purpose of the federal act involved. In *Cort*, the Supreme Court cited and distinguished the *Bivens* case and the *Borak* case cited above. We believe that the facts alleged in our instant case are considerably closer to *Bivens* and *Borak* than they are to the facts in *Cort v. Ash, supra*.

In *Bivens*, federal narcotics agents were alleged to have entered plaintiff's home without a warrant and without probable cause in violation of the Fourth Amendment to the United States Constitution. The defendants had argued, among other things, as the defendants do in our instant case, that plaintiffs should be remanded to an action at state law. The opinion of the court responded:

Accordingly, as our cases make clear, the Fourth Amendment operates as a limitation upon the exercise of federal power regardless of whether the State in whose jurisdiction that power is exercised would prohibit or penalize the identical act if engaged in by a private citizen. It guarantees to citizens of the United States the absolute right to be free from unreasonable searches and seizures carried out by virtue of federal authority. And "where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." *Bell v. Hood*, 327 U.S. [678], at 684 [66 S.Ct. 773, at 777, 90 L.Ed. 939] (footnote omitted); see *Bemis Bros. Bag Co. v. United States*, 289 U.S. 28, 36 [53 S.Ct. 454, 457, 77 L.Ed. 1011] (1933) (Cardozo, J.); *The Western Maid*, 257 U.S. 419, 433 [42 S.Ct. 159, 161, 66 L.Ed. 299] (1922) (Holmes, J.).

403 U.S. at 392, 91 S.Ct. at 2002.

The court's reasoning in *Bivens* concluded:

Finally, we cannot accept respondents' formulation of the question as whether the availability of money damages is necessary to enforce the Fourth Amendment. For we have here no explicit congression-

al declaration that persons injured by a federal officer's violation of the Fourth Amendment may not recover money damages from the agents, but must instead be remitted to another remedy, equally effective in the view of Congress. The question is merely whether petitioner, if he can demonstrate an injury consequent upon the violation by federal agents of his Fourth Amendment rights, is entitled to redress his injury through a particular remedial mechanism normally available in the federal courts. Cf. *J. I. Case Co. v. Borak*, 377 U.S. 426, 433 [84 S.Ct. 1555, 1560, 12 L.Ed.2d 423] (1964); *Jacobs v. United States*, 290 U.S. 13, 16 [54 S.Ct. 26, 27–28, 78 L.Ed. 142] (1933). "The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury." *Marbury v. Madison*, 1 Cranch 137, 163 [2 L.Ed. 60] (1803). Having concluded that petitioner's complaint states a cause of action under the Fourth Amendment, *supra*, at 390–395, we hold that petitioner is entitled to recover money damages for any injuries he has suffered as a result of the agents' violation of the Amendment.

403 U.S. at 397, 91 S.Ct. at 2005.

While the *Bivens* case dealt with the creation of a civil damage action to aid in protecting a *constitutional* right, the court reached a similar result in *J. I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) in providing a civil remedy to make a federal *statute* more effective. In *Borak*, a unanimous court held that it was appropriate for the court to provide a remedy where plaintiff's legal rights under § 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 77 et seq. (1976) were alleged to have been invaded. The court employed very broad language in establishing the right on the part of the plaintiff to a private suit and a private remedy. It said:

We, therefore, believe that under the circumstances here it is the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose. As was said

in *Sola Electric Co. v. Jefferson Electric Co.*, 317 U.S. 173, 176 [63 S.Ct. 172, 174, 87 L.Ed. 165] (1942):

"When a federal statute condemns an act as unlawful, the extent and nature of the legal consequences of the condemnation, though left by the statute to judicial determination, are nevertheless federal questions, the answers to which are to be derived from the statute and the federal policy which it has adopted."

See also *Tunstall v. Brotherhood of Locomotive Firemen & Enginemen*, 323 U.S. 210, 213 [65 S.Ct. 235, 237, 89 L.Ed. 187] (1944); *Deitrick v. Greaney*, 309 U.S. 190, 201 [60 S.Ct. 480, 485, 84 L.Ed. 694] (1940). It is for the federal courts "to adjust their remedies so as to grant the necessary relief" where federally secured rights are invaded. "And it is also well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Bell v. Hood*, 327 U.S. 678, 684 [66 S.Ct. 773, 777, 90 L.Ed. 939] (1946).

377 U.S. at 433, 84 S.Ct. at 1560.

We recognize, of course, that our current problem does not involve a constitutional violation and that unlike the legislation in *Borak*, the federal statutes involved here neither hint at nor reject plaintiffs' claim for civil damages.

Since the district judge decided this question in the negative, the Supreme Court has written five times on this subject: *Chrysler Corp. v. Brown*, 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979); *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979); *Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *Transamerica Mortgage Advisors, Inc. v. Lewis*, —— U.S. ——, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979).

In *Cannon v. University of Chicago, supra*, Justice Stevens, writing for the majori-

ty of the court in upholding a private right of action where none was specifically authorized or denied, said:

> When Congress intends private litigants to have a cause of action to support their statutory rights, the far better course is for it to specify as much when it creates those rights. But the Court has long recognized that under certain limited circumstances the failure of Congress to do so is not inconsistent with an intent on its part to have such a remedy available to the persons benefited by its legislation. . . . We therefore conclude that the petitioner may maintain her lawsuit, despite the absence of any express authorization for it in the statute.

441 U.S. 677, 717, 99 S.Ct. 1946, 1967–1968. And in a very brief concurring opinion, Justice Rehnquist added:

> [T]he Court's opinion demonstrates that Congress at least during the period of the enactment of the several titles of the Civil Rights Act tended to rely to a large extent on the courts to *decide* whether there should be a private right of action, rather than determining that question for itself. . . . [N]umerous cases from other federal courts, gave Congress good reason to think that the federal judiciary would undertake this task.

*Id.* at 718, 99 S.Ct. at 1968. (Emphasis in the original).

In these recent cases the Supreme Court has repeatedly followed and emphasized the *Cort* test:

> In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," *Texas & Pacific R. Co. v. Rigsby*, 241 U.S. 33, 39 [36 S.Ct. 482, 484, 60 L.Ed. 874] (1916) (emphasis supplied)—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? See, *e. g., National Railroad Passenger Corp. v. National Ass'n of Railroad Passengers*, 414 U.S. 453, 458, 460 [94 S.Ct. 690, 693, 694, 38 L.Ed.2d 646] (1974) (*Amtrak*). Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? See, *e. g., Amtrak, supra; Securities Investor Protection Corp. v. Barbour*, 421 U.S. 412, 423 [95 S.Ct. 1733, 1740, 44 L.Ed.2d 263] (1975); *Calhoon v. Harvey*, 379 U.S. 134 [85 S.Ct. 292, 13 L.Ed.2d 190] (1964). And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? See *Wheeldin v. Wheeler*, 373 U.S. 647, 652 [83 S.Ct. 1441, 1445, 10 L.Ed.2d 605] (1963); cf. *J. I. Case Co. v. Borak*, 377 U.S. 426, 434 [84 S.Ct. 1555, 1560, 12 L.Ed.2d 423] (1964); *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 394–395 [91 S.Ct. 1999, 2003–2004, 29 L.Ed.2d 619] (1971); *id.*, at 400, 91 S.Ct. at 2006 (Harlan, J., concurring in judgment).

*Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975).

In our instant case, each plaintiff is clearly "one of the class for whose especial benefit" the statutes here involved were created. We find no specific language in the legislative history of the statutes previously cited which shows specific intent to create a civil remedy or which prohibits inference of such intent. It is clear to us that Congress has taken care in comprehensive legislation to protect the safety of passengers flying on United States airlines or flying on aircraft intended to land at United States airports or on aircraft bound for foreign lands after departure from an airport in the United States. A clear-cut purpose has been defined in federal legislation and the federal courts have been given specific jurisdiction to impose criminal penalties against those who commit simple or felonious assaults on aircrafts under the conditions described above. A civil action for damages would certainly be consistent with the overall congressional purpose and we believe should be inferred therefrom.

Indeed the existence or nonexistence of a civil cause of action in this case may create a legal precedent which will affect other possible fact situations (aircraft kidnapping or terrorism) some of which may well cry out for more than the criminal remedy.

Finally, the maintenance of civil peace on airlines flying to and from the United States and foreign lands is clearly a topic of federal, not state, significance. The State of Tennessee has not legislated on this subject and we believe that most state courts would be loathe to reach for jurisdiction over the results of an altercation which occurred at 29,000 feet over the Brazilian jungle. This problem is certainly not one "traditionally relegated to the state courts."

It seems to this court to be an appropriate step under the legal doctrines which we have outlined above to approve a civil cause of action for damages derived from criminal statutes which plaintiffs alleged were violated in this case.

We recognize, of course, that when and if this case is finally tried, it may result in a swearing match between individuals, all of whom are now alleged to have been under some influence of liquor, and that sorting out who hit whom first may appear to be a task more appropriate for a police court than a federal district court.[1]

As to the portions of the complaint seeking damages from the named individual defendants, the judgment of the District Court is reversed and the case is remanded for further proceedings consistent with this opinion.

■ The dismissal of the complaint as to Regency Travel, Inc. for failure to state a cause of action is affirmed. The dismissal of the portion of the complaint for damages against defendant Braniff International Airlines, Inc., based upon 49 U.S.C. § 1374, is affirmed. The dismissal of the complaint against defendant Braniff International Airlines, Inc., based upon "its failure to prevent the incidents from occurring having the affirmative duty to do so" is reversed. We find no duty to provide police services on the part of appellee Braniff. Research concerning this case has, however, disclosed a possibly applicable federal regulatory scheme.[2] This suggests that appellants' last quoted allegation concerning appellee Braniff, plus appellants' claims concerning at least one of the defendants' drinking should await the further development of the facts in this case. This section of the Act and this regulation were not cited in the briefing to this court and it does not appear from the appellate record that they were ever called to the attention of the district judge. We believe that they should be the subject of consideration by the District Court before appellate decision.

1. Indeed, the district judge was of a view that the action could be maintained appropriately in the state court since all parties involved were residents of Memphis, Tennessee.

2. 49 U.S.C. § 1421(a)(6) (1976):

The Secretary of Transportation is empowered and it shall be his duty to promote safety of flight of civil aircraft in air commerce by prescribing and revising from time to time: . . .

(6) Such reasonable rules and regulations, or minimum standards, governing other practices, methods, and procedure, as the Secretary of Transportation may find necessary to provide adequately for national security and safety in air commerce.

14 C.F.R. § 121.575 (1979):

(a) No person may drink any alcoholic beverage aboard an aircraft unless the certificate holder operating the aircraft has served that beverage to him.

(b) No certificate holder may serve any alcoholic beverage to any person aboard any of its aircraft who—

(1) Appears to be intoxicated;

(2) Is escorting a person or being escorted in accordance with § 121.584; or

(3) Has a deadly or dangerous weapon accessible to him while aboard the aircraft in accordance with § 121.585(a).

(c) No certificate holder may allow any person to board any of its aircraft if that person appears to be intoxicated.

(d) Each certificate holder shall, within five days after the incident, report to the Administrator the refusal of any person to comply with paragraph (a) of this section, or of any disturbance caused by a person who appears to be intoxicated aboard any of its aircraft.

396

For the reasons stated above, the judgment of the District Court is vacated in the respects cited above and those allegations are remanded to the District Court for further proceedings consistent with this opinion.