### Geraldine MARGOLIS and Jerry Margolis, Plaintiff,

v.

### UNITED AIRLINES, INC., Defendant.

### No. 92–CV–71662–DT.

United States District Court, E.D. Michigan, S.D.

Jan. 25, 1993.

William Pultusker, Southfield, MI, for plaintiff.

Mona Lisa T. Cichosz, Detroit, MI, for defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS

EDMUNDS, District Judge.

### Introduction

This matter has come before the Court on Defendant United Airlines' Motion to Dismiss.[1] Arguing that Plaintiffs' claims for negligence are preempted by Section 1305 of the Airline Deregulation Act, Defendant moves this Court to dismiss Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons stated herein, Defendant's motion is denied.

### Statement of Facts and Claims

Plaintiff Geraldine Margolis claims she sustained injuries on a United Airlines flight on August 5, 1991, when a luggage carrier fell from an overhead bin and struck her on the head. Plaintiff alleges that she suffered a closed head injury and a balance disorder. As a result of her injury, Geraldine Margolis and her husband, Jerry Margolis, brought this negligence action against Defendant United Airlines.

The Complaint alleges that United Airlines is responsible for the acts of its employees, that United Airlines and its employees had a duty to exercise due care, and that an employee of United Airlines breached his or her duty of care by negligently causing a luggage carrier to fall from the overhead bin, thus injuring Geraldine Margolis. Paragraphs 4, 6, and 7 of the Complaint. Plaintiff's Complaint also alleges that United Airlines negligently trained and hired its employees, negligently maintained the airplane in an unsafe condition, and negligently failed to warn passengers of the unsafe condition. Paragraph 8 of the Complaint. Geraldine Margolis has brought suit against United for damages for personal injury. Her husband, Jerry Margolis, claims loss of consortium.

### Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted. In considering such motions, a court must accept as true all well-pleaded facts in the complaint. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Further, the Court must read the complaint as a whole, viewing it broadly and liberally in accordance with Federal Rule of Civil Procedure 8(f). Rule 8(f) provides, "All pleadings shall be so construed as to do substantial justice."

As noted above, the complaint specifically alleges negligent training and hiring of employees, negligent maintenance of the airplane, and failure to warn passengers of unsafe conditions on the airplane. It also generally alleges that Defendant is liable for the negligence of its employees. *See* paragraphs 4, 6, and 7 of the complaint. In

---

**1.** In addition to Defendant's motion to dismiss, also pending before this Court is Plaintiffs' motion for partial summary judgment on the issue of liability. At the hearing on January 20, 1993 regarding Defendant's motion to dismiss, the parties stipulated on the record that in the event this case is not dismissed, Defendant would stipulate to liability. Thus, the Court does not address Plaintiffs' motion at this time as it apparently will become moot.

light of the mandate of Rule 8(f), the Court construes Plaintiffs' complaint as also alleging a general negligence claim, that is, a claim that United Airlines is vicariously liable for its employee's breach of the duty of reasonable care.

### Discussion

■ As a general rule, federal law preempts state law where (1) Congress has expressly preempted state law, *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 95, 103 S.Ct. 2890, 2898, 77 L.Ed.2d 490 (1983); (2) where Congressional intent to preempt may be inferred generally from the pervasiveness of the federal regulatory scheme, *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947); and (3) where state law conflicts with federal law or interferes with the achievement of congressional objectives, *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963).

Defendant argues that the state law claims which form the basis of Plaintiff's action are expressly preempted by federal law. United Airlines is an air carrier authorized to conduct air transportation and organized pursuant to the Federal Aviation Act, 49 U.S.C.A.App. § 1301–1551 (West 1976 and Supp.1992). Section 1305(a) of this Act provides as follows:

(a) Preemption

(1) Except as provided in paragraph (2) of this subsection, no State or political subdivision thereof and no interstate agency or other political agency of two or more states shall enact or enforce any law, rule, regulation, standard or other provision having the force and effect of law relating to rates, routes, or services of any air carrier having authority under subchapter IV of this chapter to provide air transportation.

49 U.S.C.A.App. § 1305(a)(1) (West Supp. 1992). To understand the intent and scope of this provision, it is important to consider its historical context.

### History of Airlines Regulatory Legislation [2]

In 1938 Congress created the Civil Aeronautics Board and authorized it to regulate entry into the interstate airline industry, the routes that airlines could fly, and the fares that they could charge consumers. The 1938 Act included a "savings clause" which provided as follows:

Nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.

49 U.S.C.A.App. § 1506 (West 1976).

Although the 1938 Act was replaced by a similar regulatory scheme in 1958, the principal provisions of the statute remained in effect until 1978. In that year, Congress decided to withdraw economic regulation of interstate airline rates, routes and services. Congress therefore enacted the Airline Deregulation Act of 1978 (ADA) "to encourage, develop, and attain an air transportation system which relies on competitive market forces to determine the quality, variety and price of air services." H.R.Rep. No. 95–1779, 95th Cong., 2d Sess., 53, *reprinted in* 1978 U.S.C.C.A.N. 3737. To avoid the frustration of that goal by the substitution of state regulations for the recently removed federal regulations, Congress enacted § 105(a) of the ADA, which preempts any state law "relating to rates, routes, or services of any air carrier having authority under subchapter IV of this chapter to provide air transportation." Section 105(a) of the ADA, the preemption provision, became section 1305(a) of the Federal Aviation Act (FAA). 49 U.S.C.A.App. § 1305(a)(1). Congress also retained the savings clause that preserved common law and statutory remedies. 49 U.S.C.A.App. § 1506 (West 1976).

In promulgating regulations pursuant to the Airline Deregulation Act, the Civil Aeronautics Board focused on the two underlying purposes of the Act—to prevent

---

**2.** The discussion of the history of airlines regulatory legislation is drawn primarily from *Morales v. Transworld Airlines,* — U.S. —, — –

——, 112 S.Ct. 2031, 2054–59, 119 L.Ed.2d 157 (1992) (Stevens, J., dissenting).

state economic regulation from frustrating the benefits of federal deregulation, and to clarify the confusion under the prior law which permitted some dual state and federal regulation of the rates and routes of the same carrier. 44 Féd.Reg. 9948–49 (1979).[3] The Board thus explained that:

> Section 105 forbids state regulation of a federally authorized carrier's routes, rates, or services. Clearly, states may not interfere with a federal carrier's decision on how much to charge or which markets to serve.... Similarly, a state may not interfere with the services that carriers offer in exchange for their rates and fares. For example, liquidated damages for bumping (denial of boarding), segregation of smoking passengers, minimum liability for loss, damages, and delayed baggage, and ancillary charges for headsets, alcoholic beverages, entertainment, and excess baggage would clearly be "service" regulation within the meaning of section 105.

> Additionally, we conclude that regulation of capital structure, minimum insurance requirements, bonding, etc. motivated by a desire to protect the quality of service is included with the preemption imposed in section 105.

*Id.* at 9951. A state common law claim based on negligence and the standard of reasonable care does not purport to regulate the services that air carriers provide to their customers in exchange for their fares. The common law of negligence does not hold the airlines to a different standard of care from that provided by the Federal Aviation Act and related regulations.[4] Further, nowhere in the legislative history or in the evolution of the statute is there any suggestion that the preemption provision of the Airline Deregulation Act was intended to preclude common law negligence actions.

### Case Authority Prior to Morales

Prior to the Supreme Court opinion in *Morales,* —— U.S. ——, 112 S.Ct. 2031 (1992), case law concerning preemption divided fairly neatly between economic or regulatory issues and personal injury, damage or negligence issues. Although there was some disagreement concerning the scope of preemption, most courts which considered the issue held that preemption under section 1305(a) was a broad prohibition against incursions into the field of air carrier regulation. *TransWorld Airlines, Inc. v. Mattox,* 897 F.2d 773 (5th Cir.) (state deceptive advertising laws), *cert. denied,* 498 U.S. 926, 111 S.Ct. 307, 112 L.Ed.2d 261 (1990); *O'Carroll v. American Airlines, Inc.,* 863 F.2d 11 (5th Cir.) (claim for "wrongful exclusion" of boisterous passenger), *cert. denied sub nom. O'Carroll v.*

---

**3.** The Federal Register includes the following "statements of general policy" concerning the implementation of the preemption provision of the ADA:

> The starting point for our analysis is the Airline Deregulation Act of 1978 (ADA) (Public L. 95–504) which became effective on October 24, 1978. In broad outline, the ADA sets deadlines and policies for deregulating economic aspects of interstate air transportation, culminating in the sunsetting of the Board's principal domestic rate and route authority. By phasing out economic regulation of airlines, Congress sought to encourage a more competitive and efficient airline industry.

> As part of this deregulation effort, Congress enacted a provision (section 4 of Publ. L. 95–504; section 105 of the Federal Aviation Act) specifically preempting State regulation of the rates, routes or services of air carriers having authority under Title IV of the Federal Aviation Act to provide interstate air transportation....

> ....

One policy behind section 105 was to prevent State economic regulation from frustrating the benefits of decreased Federal regulation. In the section-by-section analysis of a precursor to the ADA, the House managers of the Bill stated:

> * * * with the passage of legislation ... loosening Federal regulation of airline service and fares, it is possible that some States will enact their own regulatory legislation, imposing utility type regulation on interstate airline service and fares. The [Act] includes a specific statutory provision precluding State interference with interstate service and fares. Section-by-section analysis of H.R. 8813 Cong. Rec., September 23, 1977, H. 10007–8.

> Another policy was to avoid the confusion caused under existing law which permitted dual State and Federal regulation of the same carrier.

44 Fed.Reg. 9948–49 (1977).

**4.** See footnote 5, *infra.*

*Chaparral Airlines, Inc.,* 490 U.S. 1106, 109 S.Ct. 3158, 104 L.Ed.2d 1021 (1989); *Hingson v. Pacific Southwest Airlines,* 743 F.2d 1408 (9th Cir.1984) (discrimination against blind passengers); *Diefenthal v. Civil Aeronautics Board,* 681 F.2d 1039 (5th Cir.1982) (smoking regulations), *cert. denied,* 459 U.S. 1107, 103 S.Ct. 732, 74 L.Ed.2d 956 (1983); *Anderson v. USAir, Inc.,* 818 F.2d 49 (D.C.Cir.1987) (regulation of air carrier seating policies for handicapped passengers); *VonAnhalt v. Delta Air Lines, Inc.,* 735 F.Supp. 1030 (S.D.Fla. 1990) (claims for negligence, defamation, assault and battery relating to exclusion of boisterous passengers).

Several of these decisions, i.e., *O'Carroll, Hingson, Diefenthal,* and *Anderson,* relied on or mentioned the preemption of state law "relating to ... services." Yet the "services" referred to are airline policies such as those examples listed in the policy statement published in the Federal Register quoted above, that is, liquidated damages for bumping, denial of boarding, segregation of smoking passengers, etc. "Relating to ... services" as interpreted under the facts of these cases did not include the negligent performance of services by airline employees resulting in personal injury.

In contrast to the *O'Carroll* and *Mattox* line of cases, preemption disputes involving traditional personal injury or negligence claims were almost uniformly resolved against federal preemption. *Bieneman v. City of Chicago,* 864 F.2d 463 (7th Cir. 1988) (condemnation based on airport noise; "State courts award damages every day in air crash cases, notwithstanding that federal law preempts the regulation of safety in air travel."), *cert. denied,* 490 U.S. 1080, 109 S.Ct. 2099, 104 L.Ed.2d 661 (1989); *Air Crash Disaster at John F. Kennedy Internat'l Airport,* 635 F.2d 67 (2d Cir.1980) (compensatory damages not preempted); *Stewart v. American Airlines,* 776 F.Supp. 1194 (S.D.Tex.1991) (no preemption where plaintiff was injured when nose wheel deflated); *In re Air Crash Disaster at Sioux City, Iowa,* 734 F.Supp. 1425 (N.D.Ill.1990) (FAA does not preempt claim for punitive damages in air crash case); *In re Air Crash Disaster at Stapleton Internat'l Airport,* 721 F.Supp. 1185 (D.Colo.1988) (no preemption of traditional tort remedies in air crash case). Only the Fifth Circuit and one court in the Southern District of Texas (part of the Fifth Circuit) found preemption in personal injury cases. *Baugh v. Trans-World Airlines, Inc.,* 915 F.2d 693 (5th Cir.1990) (FAA preempts state law negligence claim for injury caused when flight attendant stepped on passenger's foot); *Howard v. Northwest Airlines, Inc.,* 793 F.Supp. 129 (S.D.Tex.1992) (Harmon, J.) (preemption of wrongful death action alleging airline failed to assist ill passenger); *Zachary v. Northwest Airlines, Inc.,* Case No. H–90–1999, 1991 WL 487289 (S.D.Tex. March 22, 1991) (Harmon, J.) (FAA preempts state law negligence claim for injury when suitcase fell from overhead bin). These courts relied on broad language from *O'Carroll* and *Mattox,* neither of which were personal injury cases. *O'Carroll* dealt with a claim for "wrongful exclusion" from a flight, essentially a contract action. *Mattox* dealt with a claim under state deceptive advertising laws, essentially an economic regulation. In this Court's opinion, reliance on *O'Carroll* and *Mattox* is misplaced in the context of a negligence claim for personal injury. Preemption under section 1305(a) does not apply to a common law negligence claim because Congress did not intend to preempt this type of common law claim.

### Implications of Morales

In 1992, the Supreme Court held in *Morales,* —— U.S. ——, 112 S.Ct. 2031, that state guidelines regarding airline fare advertising were expressly preempted by the ADA. *Morales* focused on the question of whether a general state regulation of deceptive trade practices, as applied to advertising and promotion in the airlines industry, was a state law "relating to routes, rates or services" under § 1305(a)(1). In reaching its decision, the Court was concerned with defining the scope of "relating to," rather than the scope of "services." The Court stated:

> For purposes of the present case, the key phrase, obviously, is "relating to." The

ordinary meaning of these words is a broad one—"to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with," Black's Law Dictionary 1158 (5th ed. 1979)—and the words thus express a broad pre-emptive purpose. We have repeatedly recognized that in addressing the similarly worded pre-emption provision of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1144(a), which pre-empts all state laws "insofar as they ... relate to any employee benefit plan." We have said, for example, that the "breadth of [that provision's] pre-emptive reach is apparent from [its] language," ... that it has a "broad scope," ... and an "expansive sweep," ... and that it is "broadly worded," ... "deliberately expansive," ... and "conspicuous for its breadth,".... True to our word, we have held that a state law "relates to" an employee benefit plan, and is pre-empted by ERISA, "if it has a connection with or reference to such a plan." ... Since the relevant language of the ADA is identical, we think it appropriate to adopt the same standard here: State enforcement actions having a connection with or reference to airline "rates, routes, or services" are pre-empted under 49 U.S.C.App. [sic] § 1305(a)(1).

*Morales,* —— U.S. at ——, 112 S.Ct. at 2037 (citations omitted).

However, the Court concluded its textual analysis of the preemption provision with the statement that *"state enforcement actions* having a connection with or reference to 'rates, routes, or services' are preempted under 49 U.S.C.A. § 1305(a)(1)." *Id.* (emphasis added). Thus, although the Court's interpretation of the "relating to" language encompasses any state regulation or enforcement action which has a connection or reference to "rates, routes, or services," *Morales* does not by its express terms extend to claims brought by individuals based on the negligence of the airline or its employees.

Also persuasive is *Cipollone v. Liggett Group, Inc.,* —— U.S. ——, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), in which a plurality of the Supreme Court held that state claims against a tobacco company based on breach of express warranty, intentional fraud, and misrepresentation were not preempted by the labelling and warnings requirements of the Public Health Cigarette Smoking Act of 1969. The Court declined to extend preemption to an area which had not been specifically delineated by Congress. In concurring, Justice Blackmun noted, "[W]e cannot find the state common-law damages claims at issue in this case pre-empted by federal law in the absence of clear and unambiguous evidence that Congress intended that result." *Id.* —— U.S. at ——, 112 S.Ct. at 2625. Blackmun further explained the limited scope of federal preemption as follows:

The principles of federalism and respect for state sovereignty that underlie that Court's reluctance to find pre-emption where Congress has not spoken directly to the issue apply with equal force where Congress has spoken, though ambiguously. In such cases, the question is not *whether* Congress intended to preempt state regulation, but to what *extent.* We do not, absent unambiguous evidence, infer a scope of preemption beyond that which clearly is mandated by Congress' language.

*Id.* —— U.S. at ——, 112 S.Ct. at 2626 (emphasis in original).

■ Congress has expressed no intent to preempt traditional state law claims for negligence in the ADA amendments to the Federal Aviation Act. To the contrary, the Federal Aviation Act retains a savings clause addressed specifically to "the remedies now existing at common law." In order to provide for common law remedies such as damages, Department of Transportation regulations require that airlines maintain insurance "for bodily injury to or death of a person, or for damage to property of others, resulting from the carrier's operation or maintenance of the aircraft in air transportation provided under its authority from the Board." 14 C.F.R. § 205.5(a) (1992). Given the Supreme Court's directive that courts determine the preemptive intent of Congress based upon the

plain language of the statute, this Court can only conclude that Congress did not intend to preempt state common law actions for personal injury based on the negligence of the airline or its employees.[5] Preemption under section 1305 was not intended to be an insurance policy for air carriers against their own negligence.

### The FAA Fails to Provide a Remedy

■ Finally, if the Federal Aviation Act preempts state law negligence claims such as this one, Geraldine Margolis and other injured plaintiffs would be left without any remedy for serious physical injuries. Plaintiffs might conceivably be able to recast their claim as a violation of section 1374, which states that all air carriers must "provide safe and adequate service, equipment, and facilities ... establish, observe and enforce just and reasonable ... rules, regulations and practices relating to [air travel]...." However, the FAA does not provide for any private right of action. *Anderson,* 818 F.2d at 54–55; *Hingson,* 743 F.2d at 1414; *Diefenthal,* 681 F.2d at 1049.[6] Plaintiffs' only recourse is to file an administrative complaint with the Federal Aviation Administration or the Department of Transportation. *See* 14 C.F.R. §§ 13.5 and 3.02.201–.206 (1992). An action in federal court can be taken under the Federal Aviation Act only by the federal agencies governing aviation or the Attorney General. 49 U.S.C.A.App. § 1487 (1992). While Plaintiffs might file an administrative complaint regarding Defendant's violation of the Act, the only remedies provided by the FAA are for civil[7] and criminal penalties and injunctive relief. 49 U.S.C.A.App. §§ 1471–1474, 1487 (West 1976 and Supp. 1992). No money damages or other restitution are available to a private party. Thus, the FAA provides for public enforcement of the Act, not for remedies to a private party.

The failure of Congress to provide for a private right of action distinguishes the FAA from other areas of complete federal preemption. For example, under ERISA, which was the Supreme Court's point of reference in *Morales,* even though the Supreme Court has recognized the broadest possible preemption, *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), the Sixth Circuit has held that "preemption should apply to a state law claim only if Congress has provided a remedy for the wrong or wrongs asserted." *Perry v. P*I*E Nationwide, Inc.,* 872 F.2d 157, 162 (6th Cir.1989), *cert. denied,* 493 U.S. 1093, 110 S.Ct. 1166, 107 L.Ed.2d 1068 (1990).[8] Because Congress has not provided any remedy for an airline passenger who suffers personal injury due to the negligence of the airline and its

---

**5.** It should be noted that while the FAA does extensively regulate the operation and maintenance of aircraft as well as the training of airline employees, state law regarding negligence does not attempt to hold United Airlines to a different standard of care from that prescribed by the Federal Aviation Act and the corresponding regulations. None of the federal regulations deal with the breach of the duty of reasonable care. *See, e.g.,* 14 C.F.R. §§ 121.123 (facilities must be available for service and maintenance of aircraft); § 121.285 (carriage of cargo in passenger compartment); § 121.421 (flight attendant training); § 121.571 (oral briefing of passengers regarding location of emergency exits, use of seat belts, etc.), § 121.589 (carry-on baggage must be properly stowed and secured before take-off).

**6.** Defendant argues that Plaintiffs have a private right of action for failure of an airline to provide for the safety of its passengers, citing *Chumney v. Nixon,* 615 F.2d 389 (6th Cir.1980). *Chumney* does not support this proposition. *Chumney* held only that under a criminal law providing for the punishment of persons guilty of assault on an airplane, there is a private right of action. The Sixth Circuit remanded to the district court the issue of whether the FAA and the corresponding regulations apply to an action against an airline claiming that the airline should have controlled passengers' drinking of alcoholic beverages. The Court dismissed the plaintiff's claim against the air carrier under § 1374 without explanation.

**7.** Civil penalties are limited to no more than $1,000. 49 U.S.C.A.App. § 1471 (West Supp. 1992).

**8.** In *Perry,* the Sixth Circuit held that the plaintiff's state law claims of fraud, misrepresentation and promissory estoppel were not preempted by ERISA. The Court reasoned that the remedies provided under ERISA were not adequate "to redress the wrongs claimed, specifically, ... rescission and refund of wage reductions." 872 F.2d at 162.

 

employees, preemption should not apply to a claim under common law negligence to recover for personal injury.

### Conclusion

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's complaint for failure to state a claim for which relief can be granted therefore must be and hereby is DENIED.