**In re AIRCRASH DISASTER NEAR MONROE, MICHIGAN ON JANUARY 9, 1997.**

**No. 97–MDL–1178.**

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 9, 1997.

## OPINION AND ORDER

FEIKENS, District Judge.

### 1. BACKGROUND

On January 9, 1997, Comair Inc.'s ("Comair") flight #3272 crashed en route from Cincinnati to Detroit. The crash occurred north of Monroe, Michigan, a short distance from Detroit Metropolitan International Airport. The plane was an EMB–120 model manufactured by Embraer–Empresa Brasileira de Aeronauticas, S.A. ("Embraer"), a Brazilian company. All 26 passengers and 3 crew members on board were killed. Comair is the "commuter" subsidiary of Delta Air Lines, Inc. ("Delta") and typically operates smaller planes in shorter flights. The decedents' representatives have sued five parties: 1) Delta, 2) Comair, 3) Comair Holdings Inc.—Comair's subsidiary, 4) Embraer, and 5) Embraer Aircraft Corporation—Embraer's U.S. subsidiary.

The plaintiffs' cases were initially filed in various state and federal courts. The federal court cases have been consolidated on my docket by the Multidistrict Litigation Panel for pretrial purposes in accordance with 28 U.S.C. § 1407 (1997). At this time, eleven cases are pending before me in the Eastern District of Michigan, and three "tagalong"[1] case are expected to be transferred here. Of the eleven cases on my docket, four (*Douchard, Nilson, Rosiak,* and *Wansedel*)[2] are based on diversity jurisdiction. Another four cases (*Adams, Addison, Barrows,* and *Herman*)[3] were initially filed in state courts but

the plaintiffs either do not object or withdrew their objections as to jurisdiction when the cases were removed to federal court and transferred to my docket. The remaining three cases (*DeMarco, Pfau,* and *Sagle*)[4] were initially filed in state courts, and those plaintiffs have pending Motions to Remand which claim a lack of federal jurisdiction.

Embraer's capital structure is crucial to the determination of these Motions to Remand. The EMB–120 plane which crashed was designed, manufactured, and delivered prior to December 7, 1994. Also before this date, the Brazilian government ("Brazil") owned 97% of Embraer's common, voting stock. Embraer's preferred, non-voting stock was publicly traded and approximately 230,000 people owned these shares. Nearly one-third of the total shares of Embraer's stock were common shares. The other two-thirds were preferred shares.

On December 7, 1994, Brazil altered the ownership of Embraer's common stock. Approximately 35% of the common stock was sold to the general public. Brazil retained 11% of the stock. The remaining 54% was sold to two pension funds and a bank. Brazil owns a majority of the bank's common and preferred stock, and exercises significant control over the two pension funds.

### 2. JURISDICTIONAL ISSUES

The Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1332(a)(2–

---

1. A "tagalong" case is a case in the process of being transferred to my docket by the Multidistrict Litigation Panel. *See* Federal Judicial Center, Manual for Complex Litigation (Third), 251, 254 (1995).

2. *Douchard v. Embraer Aircraft Corp.,* No. 97–CV–75291 (E.D.Mich., transferred Oct. 20, 1997); *Nilson v. Comair, Inc.,* No. 97–CV–75583 (E.D.Mich. transferred Nov. 10, 1997); *Rosiak v. Comair, Inc.,* No. 97–CV–74086 (E.D.Mich. filed April 29, 1997); *Wansedel v. Comair, Inc.,* No. 97–CV–73018 (E.D.Mich. filed June 24, 1997). *Douchard* was initially filed in Mississippi state court with causes of action against two in-state travel agencies. When the plaintiff dismissed her claims against these travel agents, diversity jurisdiction was created. *Nilson, Rosiak* and *Wansedel* were initially filed in federal court.

3. *Adams v. Comair, Inc.,* No. 97–CV–73254 (E.D.Mich. transferred July 7, 1997); *Addison v.*

*Embraer Aircraft Corp.,* No. 97–CV–73709 (E.D.Mich. transferred July 29, 1997); *Barrows v. Embraer–Empresa Brasileira de Aeronauticas, S.A.,* No. 97–CV–74052 (E.D.Mich. transferred August 5, 1997); *Herman v. Embraer Aircraft Corp.,* No. 97–CV–75651 (E.D.Mich. transferred Nov. 13, 1997). Of further note, Adams initially filed both a state and federal complaint. The defendants then removed the state case to federal court, and sought to consolidate the two causes of action. Adams initially objected to the removal, but later withdrew her motion to remand. *Adams,* Doc. #2 filed Sept. 25, 1997. *Addison, Barrows,* and *Herman* did not object to the removal of their cases.

4. *DeMarco v. Embraer Aircraft Corp.,* No. 97–CV–73325 (E.D.Mich. transferred July 8, 1997); *Pfau v. Comair Holding, Inc.,* No. 97–CV–75705 (E.D.Mich. transferred Nov. 19, 1997); *Sagle v. Embraer Aircraft Corp.,* No. 97–CV–74109 (E.D.Mich. transferred August 12, 1997).

4), 1391(f), 1441(d) and 1602 *et seq.* (1994), codifies the principle of comity by granting foreign states immunity to suit. 28 U.S.C. § 1602 (1994). When a foreign state engages in commercial activity, it loses this immunity and becomes amenable to suit in the United States. The FSIA still partially protects the foreign state because such a lawsuit must be brought in a federal court and decided in a non-jury trial due to the "potential sensitivity of actions against foreign states." H.R.Rep. No. 94–1487, *reprinted at* 1976 U.S.Cong. & Admin.News 6604, 6631; 28 U.S.C. § 1441(d) (1994).

The Federal Aviation Act of 1958, 49 U.S.C. §§ 40101–49105 (as amended), was crafted in response to a number of accidents between military and civilian aircraft. The principal purpose of the Act was the establishment of "a new Federal agency with powers adequate to enable it to provide for the safe and efficient use of the navigable airspace by both civil and military operations." H.R.Rep. No. 85–2360, *reprinted at* 1958 U.S.Cong. & Admin.News 3741.

Embraer relies on both the FSIA and the Federal Aviation Act to create a federal question in its removal of the *DeMarco, Pfau,* and *Sagle* ("plaintiffs") cases. The plaintiffs disagree that there is federal subject matter jurisdiction and have moved to remand their cases.

## 3. CONTENTIONS OF THE PARTIES

The *DeMarco* and *Sagle* decedents were both Florida residents. The *Pfau* decedent was an Idaho resident. All three cases were filed in the state of Florida. Embraer Aircraft Corporation was incorporated and has its principal place of business in Florida. Thus, there is no diversity jurisdiction. 28 U.S.C. § 1441(b) (1994). Embraer removed each of the plaintiffs' cases on two separate theories.

Embraer first contends that federal subject matter jurisdiction exists because Embraer satisfies the FSIA definition of a foreign state. At the time the EMB–120 plane was designed, manufactured, and delivered, Brazil owned 97% of Embraer's voting shares. Embraer argues that having a majority of its voting shares owned by a foreign sovereign entitles it to have the plaintiffs' lawsuits tried in federal court in a non-jury trial. Instead of focusing on the voting shares, plaintiffs assert that Brazil owned only about one-third Embraer's total shares (including voting and non-voting shares). Plaintiffs thus allege that Embraer does not satisfy the FSIA definition of a foreign state and it improperly removed their suits to federal court.

Embraer's second ground for removal is that the Federal Aviation Act of 1958 completely preempts the plaintiffs' cause of action. Relying on *Abdullah v. American Airlines, Inc.,* 969 F.Supp. 337 (D.Vi.1997), Embraer argues that preempting plaintiffs' cases furthers the uniform application of aviation safety rules. Plaintiffs argue that *Abdullah* is an anomalous decision which should be ignored because the weight of precedent holds that the Federal Aviation Act does not preempt aviation safety claims. *See Margolis v. United Airlines,* 811 F.Supp. 318 (E.D.Mich.1993); *In re Air Disaster,* 819 F.Supp. 1352 (E.D.Mich.1993).

## 4. ANALYSIS

### A. FSIA

The FSIA provides foreign states with immunity from lawsuits unless they are engaged in a commercial activity. 28 U.S.C. § 1602 (1994). Embraer concedes that it was engaged in a commercial activity for purposes of this lawsuit and does not seek immunity from the plaintiffs' actions. Instead, Embraer alleges it qualifies as a foreign state under the FSIA because foreign states can remove "[a]ny civil action brought in a State court ... to the district court of the United States." 28 U.S.C. § 1441(d) (1994). Embraer argues it satisfies the "agency or instrumentality of a foreign state" definition where:

> "An "agency or instrumentality of a foreign state" means any entity—(1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision, and (3) which is neither a citizen of the United States ...

nor created under the laws of any third country."

28 U.S.C. § 1603(b) (1994) ("§ 1603").

Of the three § 1603(b) requirements, plaintiffs do not contest that Embraer "is a separate legal person," or that Embraer "is neither a citizen of the United States ... nor created under the laws of any third country." The dispute involves the second factor that "a majority of [Embraer's] shares or other ownership interest" must be owned by a foreign state.

■ Plaintiffs argue that § 1603(b)(2) means that Embraer had to be "owned" by Brazil at the time plaintiffs filed their suits. At oral argument, plaintiffs' counsel dropped this contention and acknowledged that the time of the alleged wrongdoing is the proper time to determine FSIA ownership. This is in accord with the controlling opinion of the United States Court of Appeals for the Sixth Circuit. *Gould v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 450 (6th Cir.1988); *see also General Electric Capital Corp. v. Grossman*, 991 F.2d 1376, 1381 (8th Cir.1993). Embraer's alleged wrongdoing occurred either when it designed, manufactured, or delivered the EMB–120 plane. All these events occurred prior to December 7, 1994.

■ Prior to December 7, 1994, Brazil owned 97% of Embraer's common stock. Dep. of Marcelo Prais, pg. 22, 31 (Nov. 6, 1997). The preferred stock was owned by the general public. Because the preferred stock accounted for two-thirds of the total shares issued, Brazil owned only 33% of Embraer's total shares. Dep. of Marcelo Prais, pg. 32 (Nov. 6, 1997). Plaintiffs contend § 1603(b)(2) requires that a majority of the total shares, both voting and non-voting, be owned by a government. They argue that owning a majority of a company's voting shares grants a government mere "control" of a company. Plaintiffs claim that "control" is different from the "ownership" requirement of § 1603.

They base this argument on the statutory language of § 1603 that "a majority of ... shares or other ownership interest is owned by a foreign state." 28 U.S.C. § 1603(b) (1994) (emphasis added). Since § 1603 says "owned," plaintiffs try to draw a distinction between "owned" and "control." However, this neglects the "other ownership interest" clause in § 1603. The phrase "other ownership interest" suggests that "ownership" should be used in its normal legal sense where the § 1603 owner of a company enjoys the bundle of rights and powers which an "owner" would be expected to have. Brazil's control over Embraer includes such matters as the ability to appoint Embraer's officers, to set Embraer's corporate policy, and to decide how Embraer should manage its assets. Plaintiffs concede that Brazil controls Embraer. Thus, plaintiffs have acknowledged that Brazil has those bundle of rights which an owner of Embraer would be expected to have. I therefore conclude that Brazil has a § 1603 "other ownership interest" in Embraer.

*Wilk v. Creditanstalt Bankverein*, 1993 WL 97259 (S.D.N.Y.1993), supports this conclusion. In *Wilk*, the Republic of Austria owned 71% of the voting stock, but only 49.9% of the total stock of a bank. The court held that the bank was a foreign state under § 1603 of the FSIA. *Wilk* stands for the proposition that when § 1603 refers to owning a majority of a company's shares, it means owning a majority of the voting shares. Following *Wilk*, the fact that Brazil owns 97% of the voting stock, but less than 50% of the total shares, means Embraer is owned by a foreign state under § 1603. The fact that Brazil owned a majority of Embraer's voting shares and concededly controlled Embraer means Brazil satisfies § 1603(b)(2) because it both owned a "majority of [voting] shares" and had an "other ownership interest" in Embraer.

The only § 1603(b) requirement in dispute is whether Brazil "owned" Embraer. Brazil owned a majority of Embraer's voting shares, and plaintiffs concede that Brazil controlled Embraer. This satisfies § 1603(b)(2), and Embraer thus qualifies as a "foreign state" under the FSIA.

Plaintiffs' also contend that Embraer did not support its initial notice of removal with sufficient factual allegations. Embraer's notice of removal alleged the FSIA grounds for removal and supported it with the affidavit of Embraer's general counsel/secretary Marcelo Prais. Embraer's additional proofs on the

FSIA issue therefore permissibly expanded on its prior allegations. *American Educators Financial Corp. v. Bennett,* 928 F.Supp. 1113 (M.D.Ala.1996).

### B. Other Parties

■ Since there is federal subject matter jurisdiction over Embraer based on the FSIA, I have jurisdiction over the "entire civil action," including the pendent state claims against local defendants. *In re Surinam Airways Holding Co.,* 974 F.2d 1255, 1260 (11th Cir.1992); *see also United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218. Thus, I also have pendent jurisdiction as to the claims against Comair, Comair Holdings, Inc., Embraer Aircraft Corp., and Delta.

### C. FAA—Complete Preemption

Defendants' second theory of removal is that the Federal Aviation Act of 1958 and its amendments, completely preempt the aviation safety field of law. While the *Abdullah* holding favoring preemption is persuasive, it is not necessary for me to reach the preemption issue. It is moot because of my decision that the FSIA grants federal subject matter jurisdiction over all the plaintiffs' claims. Thus, I do not rule on the complete preemption argument at this time.

### 5. CONCLUSION

I hold that Embraer qualifies as a foreign state under the FSIA because at the time of the design, manufacture, and delivery of the EMB–120 plane which crashed, Brazil owned a majority of Embraer's voting shares and controlled Embraer. The *DeMarco, Pfau,* and *Sagle* plaintiffs' Motions to Remand are therefore DENIED.

I also hold that I have pendent jurisdiction over the claims against defendants Comair, Comair Holdings, Inc., Embraer Aircraft Corp., and Delta.

IT IS SO ORDERED.