In re AIR DISASTER.

Kimberly Aven BURKE, Individually and as Next Friend of Philip Reed Burke, a Minor, and Joshua Grant Burke, a Minor; and as the Duly–Appointed Representative of the Estate of John David Burke, Deceased; and Donald Burke and Sue Burke, Plaintiffs,

v.

NORTHWEST AIRLINES, INC., and Robert Ouellette, Defendants.

No. MDL 891.
No. 92–70017.

United States District Court,
E.D. Michigan, S.D.

April 6, 1993.

Opinion Denying Reconsideration
May 7, 1993.

David Holman and Wayne Fisher, Houston, TX, for Kimberly Burke.

William Maynard, Houston, TX, Carroll Debuc, Washington, DC, for Northwest.

Stephen S. Andrews, Houston, TX, for Robert Ouellette.

## OPINION AND ORDER GRANTING PLAINTIFFS' FIRST AMENDED MOTION TO REMAND

ROSEN, District Judge.

### I. INTRODUCTION

This wrongful death/negligence/deceptive trade practices action is presently before the Court on Plaintiffs' First Amended Motion to Remand filed March 3, 1992. The parties have fully briefed their respective positions concerning Plaintiffs' Motion, and the Court heard oral argument on this matter on June 23, 1992.

The issues presented by Plaintiffs' Motion are (1) whether Plaintiffs' claims are preempted under the Federal Aviation Act of 1958 (the "FAA"), 49 App.U.S.C. §1301 *et seq.*, and if so, (2) whether Defendants' removal of this action to federal court on the basis of FAA preemption was proper.

The Court has reviewed and considered the parties' briefs and oral arguments, and having further reviewed the applicable law, the Court is now prepared to rule on Plaintiffs' Motion. This Opinion and Order sets forth the Court's ruling on this matter.

### II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On December 3, 1990, two aircraft owned and operated by Defendant Northwest, flight number 1482 and flight number 299, collided on the ground at Detroit Metropolitan/Wayne County Airport in Romulus, Michigan. Flight 299, while on its takeoff roll, struck flight 1482. Plaintiffs claim that the pilot of flight 1482 became lost while taxiing to the takeoff runway without proper clearance or authority. Defendant Ouellette was the pilot of flight 299. Plaintiff John David Burke, a passenger on board flight 1482, was killed as a result of the collision.

On August 5, 1991, Mr. Burke's surviving wife, children and parents filed a "Wrongful Death and Survival Action" Complaint[1] in Texas state court in which they allege claims of negligence and deceptive trade practices[2] against Northwest and Pilot Ouellette. Defendants timely removed the action to the United States District Court for the Southern District of Texas on September 11, 1991.

---

1. Plaintiffs' action was filed under § 71.001 *et seq.* and § 71.021 of the Texas Civil Practice and Remedies Code.

2. This claim was brought under the provisions of the Texas Business and Commerce Code commonly called the Deceptive Trade Practices–Consumer Protection Act.

Defendants' asserted basis for removal was federal question jurisdiction pursuant to 28 U.S.C. § 1331.

Plaintiffs subsequently moved to remand the case on October 3, 1991. However, before the Southern District of Texas was able to address Plaintiffs' Motion to Remand, the Judicial Panel on Multidistrict Litigation, by Order dated February 10, 1992, transferred the action to this Court as part of MDL 891. Plaintiffs then filed the instant Amended Motion to Remand in this Court.

## III. PLAINTIFFS' CLAIMS

In their Texas wrongful death and survival Complaint, Plaintiffs assert four substantive claims. Their first claim [Count V of Plaintiffs' Complaint] charges Northwest with negligence in failing to adequately train or instruct the crews of the colliding planes in such areas as understanding the use of equipment, operating in low visibility conditions, taking proper precautions on the runway, and ensuring that the captain understood the operation of the equipment he was using. Plaintiffs' second claim [Count VI] charges Northwest with gross negligence alleging that Northwest's conduct in connection with the collision amounted to a conscious disregard for the rights, welfare and safety of its passengers.

In Count VII—Plaintiffs' third claim—Plaintiffs charge Pilot Ouellette with failure to exercise ordinary care and prudence while functioning as the captain of an aircraft. Specifically, Plaintiffs allege that Ouellette was negligent in that he failed to abort takeoff in weather conditions which they claim were below minimum for takeoff on the runway in use at Detroit Metro. Plaintiffs' last claim [Count VIII] charges Northwest with deceptive trade practices in that the airline represented to the American public through its advertising and brochures that it could provide a safe and reliable means of transportation and that it employed competent,

well-trained individuals to operate its aircraft.

## IV. DEFENDANTS' GROUNDS FOR REMOVAL

Defendants concede that all causes of action alleged by the Plaintiffs in their Complaint are based on state law. [Notice of Removal, p. 3.] Nonetheless, they assert that removal under federal question jurisdiction pursuant to 28 U.S.C. § 1331 is proper because they claim that all of Plaintiffs' claims relate to rates, routes or services of an air carrier, and therefore, are preempted under Section 105(a)(1) of the Federal Aviation Act, 49 App.U.S.C. § 1305(a)(1).

## V. DISCUSSION

The ultimate issue which the Court must decide is whether Plaintiffs' state law claims were properly removed to federal court. Although the parties have largely treated this issue as one requiring only a determination of whether Plaintiffs' claims are "preempted" under the Federal Aviation Act, determination of the propriety of removal actually requires more. In addition to determining whether the federal act preempts the specific state law claims, the Court must also decide whether the FAA is the type of federal act calling for application of the "*complete* preemption" doctrine.

## A. THE COMPLETE PREEMPTION DOCTRINE

A defendant may remove an action to federal court only if that court has original subject matter jurisdiction over the action.[3] If a court lacks diversity jurisdiction over an action, as in the instant case, it must have federal question jurisdiction over the action in order to have subject matter jurisdiction. A court has federal question jurisdiction over an action when that action "arises under" the Constitution or law of the United States.[4]

---

**3.** 28 U.S.C. § 1441(a) states, in relevant part:
   Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States

for the district and division embracing the place where such action is pending.

**4.** 28 U.S.C. § 1331 reads:
   The district courts shall have original jurisdiction of all civil actions arising under the

To determine whether a claim arises under federal law, a court, under the "well-pleaded complaint" rule, generally looks only to the plaintiff's complaint. *Gully v. First National Bank,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *Louisville & N.R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). If the complaint relies only on state law, the district court generally lacks subject matter jurisdiction and the action is not removable. That a defendant raises a federal defense to a state law claim, including a preemption defense, is immaterial for jurisdictional purposes. As the Court explained in *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987):

> [I]t is now well settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.

482 U.S. at 393, 107 S.Ct. at 2430 (citation omitted).

However, the Supreme Court has developed an exception to the well-pleaded complaint rule. If Congress intends that a federal statute "completely preempt" an area of state law, any complaint alleging claims under that area of state law is presumed to allege a claim arising under federal law. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546–1547, 95 L.Ed.2d 55 (1987). The complaint may thus be removed to federal court and will be treated as alleging a federal cause of action, notwithstanding that on its face, the plaintiff's complaint alleges only a state-law cause of action.

### 1. The Birth of the "Complete Preemption" Doctrine

The "complete preemption" doctrine developed out of the Supreme Court's 1968 decision in *Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). In *Avco,* the plaintiff filed a suit in Tennessee state court to enjoin its union employees from striking at its plant. The heart of the complaint was a "no-strike" clause in the collective bargaining agreement, pursuant to which "grievances" between Avco and its union employees were to be settled amicably or by binding arbitration.[5] The union removed the case to federal court, citing § 301 of the Labor Management Relations Act (the "LMRA") as the basis of federal court jurisdiction. Avco subsequently moved to remand the case to state court. The District Court denied the remand motion, and the Sixth Circuit Court of Appeals affirmed.

The Supreme Court affirmed the lower courts, explaining:

> The starting point is § 301 of the Labor Management Relations Act, 1947, 61 Stat. 156, 29 U.S.C. § 185, which, we held in *Textile Workers Union of America v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, was fashioned by Congress to place sanctions behind agreements to arbitrate grievance disputes. We stated:
>
> > "We conclude that the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws. * * * The Labor Management Relations Act expressly furnishes some substantive law. It points out what the parties may or may not do in certain situations.... Federal interpretation of the federal law will govern, not state law. But state law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy. * * * Any state law applied, however, will be absorbed as federal law and will not be an independent source of private rights. 353 U.S. at 456–457, 77 S.Ct. at 917–918.
>
> An action arising under § 301 is controlled by federal substantive law even though it is brought in state court....

Constitution, laws, or treaties of the United States.

**5.** Protesting Avco's promotion decisions, the union members engaged in work stoppages and an employee walkout, rather than attempt to resolve their dispute with Avco through the collectively-bargained grievance process. *See* 390 U.S. at 558, 88 S.Ct. at 1236.

Removal is but one aspect of "the primacy of the federal judiciary in deciding questions of federal law. [Citations omitted.]

It is thus clear that the claim under this collective bargaining agreement is one arising under the "laws of the United States" within the meaning of the removal statute. 28 U.S.C. § 1441(b). It likewise seems clear that this suit is within the "original jurisdiction" of the District Court within the meaning of 28 U.S.C. §§ 1441(a) and (b).

390 U.S. at 560, 88 S.Ct. at 1237.

Through the years, the holding of *Avco* became known as the "complete preemption" doctrine. As explained by the Supreme Court in *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983):

*Avco* stands for the proposition that if a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily "arises under" federal law.

463 U.S. at 24, 103 S.Ct. at 2854.

More recently, the Court explained the doctrine in *Caterpillar, Inc. v. Williams, supra* as follows:

There does exist ... an "independent corollary" to the well-pleaded complaint rule known as the "complete pre-emption" doctrine. On occasion, the Court has concluded that the pre-emptive force of a statute is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule."

Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law. 482 U.S. at 393, 107 S.Ct. at 2430 (citations and footnote omitted).

The evolution of the doctrine of "complete preemption", as it has developed in the case law since *Avco*, has been one of fits-and-starts and zigs-and-zags, rather than a well-delineated direct course. This "hop-scotch" decisional development has, not surprisingly, occasioned both confusion and disagreement among the federal circuit and district courts. Even today, it is hardly a model of consistency and clarity.

One thing, however, is clear—the Supreme Court has, in recent years, demonstrated a reluctance to extend application of the "complete preemption" doctrine, and, in fact, has largely limited its finding of complete preemption to two federal statutes—the Labor Management Relations Act, 29 U.S.C. § 185(a) ("LMRA"), and the Employee Retirement Income Security Act, 29 U.S.C. § 1144(a) ("ERISA"). *See Metropolitan Life Ins. Co. v. Taylor, supra; Caterpillar, Inc. v. Williams, supra; Avco Corp. v. Aero Lodge No. 735, supra.*[6]

### 2. The Development of a Two–Pronged "Complete Preemption" Removal Test

In concluding that the complete preemption doctrine would apply in cases involving removal under the LMRA and ERISA, the Supreme Court looked to the jurisdictional grants in the LMRA and ERISA, and con-

---

6. In fact, the Court was even reluctant to extend the complete preemption doctrine to ERISA, even though it acknowledged that ERISA act has a "unique pre-emptive force."

In *Metropolitan Life Ins. Co. v. Taylor, supra* the Court stated:

Even with a provision such as § 502(A)(1)(B) that lies at the heart of a statute with the unique pre-emptive force of ERISA, however, we would be reluctant to find that extraordinary pre-emptive power, such as that found with respect to § 301 of the LMRA, that converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule. But the language of the jurisdictional subsection of ERISA's civil enforcement provisions closely parallels that of § 301 of the LMRA.

481 U.S. at 65, 107 S.Ct. at 1547.

Justice Brennan, in his concurring opinion in *Taylor*, re-emphasized the Court's ruling:

While I join the Court's opinion, I note that our decisions should not be interpreted as adopting a broad rule.... The court holds only that removal jurisdiction exists when, as here "Congress has *clearly* manifested an intent to make causes of action ... *removable to federal court*." In future cases involving other statutes, the prudent course for a federal court that does not find a *clear* congressional intent to create removal jurisdiction will be to remand the case to state court.

*Id.* (Emphasis in original.)

cluded that those jurisdictional grants evinced a congressional intent to completely preempt those areas of state law relating to, respectively, collective bargaining agreements and employee benefit plans.

Section 301 of the LMRA reads:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect of the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

Similarly, section 502(f) of ERISA provides:

The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action.

29 U.S.C. § 1132(f).

In *Metropolitan Life Ins. Co. v. Taylor, supra,* the Court squarely faced the issue of whether the rule of *Avco* regarding complete preemption under the LMRA should be extended to ERISA. In that case, the Court proceeded with its "complete preemption" analysis by first determining that the plaintiff's purely state-law based breach of employment contract suit "relate[d] to an employee benefit plan" and, therefore, was preempted by ERISA. 481 U.S. at 62, 107 S.Ct. at 1546.

However, the Court expressly stated that preemption alone did not determine the re-movability of the action to federal court under the "complete preemption" doctrine. ("ERISA pre-emption, without more, does not convert a state claim into an action arising under federal law." *Id.* at 64, 107 S.Ct. at 1547.)

It was only after the Court was convinced—by virtue of the language in the jurisdictional grant in Section 502(a) of ERISA and its similarity to the jurisdictional grant in Section 301 of the LMRA [discussed *supra* ]—that Congress had manifested a clear intent that claims relating to employee benefit plans be removable that the Court found the complete preemption doctrine applicable. *Id.* at 66–67, 107 S.Ct. at 1547–1548.[7] The *Taylor* Court specifically noted, however, that removal would be inappropriate absent a clearly manifested congressional intent to make certain state claims removable to federal court. *Id.* at 65, 107 S.Ct. at 1547.

The *Taylor* court explained:

[T]he touchstone of the federal district court's removal jurisdiction is not the "obviousness" of the pre-emption defense but the intent of Congress. Indeed, as we have noted, even an "obvious" pre-emption defense does not, in most cases, create removal jurisdiction. In this case, however, Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court.

481 U.S. at 66, 107 S.Ct. at 1548.

## B. APPLICATION OF *TAYLOR* AND THE COMPLETE PREEMPTION DOCTRINE IN FAA CASES

■ Since the Supreme Court's decision in *Metropolitan Life Ins. Co. v. Taylor,* only a few federal courts have been called upon to

---

**7.** The *Taylor* Court found further evidence of congressional intent that state claims that relate to employee benefit plans be deemed to be completely preempted in the legislative history of ERISA. The Court noted the following portions of the Conference Report on ERISA and the comments of Senator Williams, one of ERISA's sponsors:

"With respect to suits to enforce benefit rights under the plan or to recover benefits under the plan which do not involve application of the title I provisions, they may be brought not only in U.S. district courts but also in State courts of competent jurisdictions. *All such actions in Federal or State courts are to be regarded as*

*arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor–Management Relations Act of 1947."* H.R.Conf.Rep. No. 93–1280, p. 327 (1974) (emphasis added).

\* \* \* \* \* \*

Senator Williams, a sponsor of ERISA emphasized ...

It is intended that [civil enforcement] actions will be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor Management Relations Act. 120 Cong. Rec. 29933 (1974)....

481 U.S. at 66, 107 S.Ct. at 1547–1548.

determine whether application of the "complete preemption" doctrine should be extended to cases removed to federal court under the Federal Aviation Act.[8] Courts that have done more than cursorily address this issue have followed the analytical process of the Supreme Court in *Taylor* and applied a two-prong test in making the "complete preemption" determination. The two-pronged test calls for, first, a determination of whether the plaintiff's state law claims are preempted, or replaced, by federal law. Thus, in the context of FAA cases, the pertinent threshold inquiry is whether the plaintiff's claims "relate to rates, routes or services". If so, the Court must move to the second inquiry, which requires a determination of whether there is language in the FAA or its legislative history from which to conclude that Congress intended to make the plaintiff's cause of action removable to federal court. *See e.g., Corporate Travel Consultants v. United Airlines, Inc.,* 799 F.Supp. 58 (N.D.Ill.1992); *Vail v. Pan Am Corporation,* 752 F.Supp. 648 (D.N.J.1990); *Stewart v. American Airlines, Inc.,* 776 F.Supp. 1194 (S.D.Tex.1991). *See also,* Eric James Moss, Note, *The Breadth of Complete Preemption: Limiting the Doctrine to Its Roots,* 76 Va.L.Rev. 1601, 1616–1617 (1990). *Cf., State of Kansas, ex rel., Stephan v. Trans World Airlines, Inc.,* 730 F.Supp. 366 (D.Kan.1990); *Wolens v. American Airlines, Inc.,* 1988 WL 116828, 1988 U.S.Dist. LEXIS 12026 (N.D.Ill.1988).

This Court finds that application of the two-pronged test as utilized by the Northern District of Illinois in *Corporate Travel Consultants* correctly follows the Supreme Court's *Taylor* analysis and, therefore, it will apply that two-pronged test in this case.

## C. PERTINENT PROVISIONS OF THE FEDERAL AVIATION ACT

Two sections of the Federal Aviation Act are particularly relevant to a determination

of the issue *sub judice.* Section 1106 of the Federal Aviation Act of 1958 Act provides:

> Nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.

49 U.S.C.App. § 1506.

When Congress amended the FAA through the Airline Deregulation Act of 1978 ("ADA"), it retained this "savings clause", but also added a specific preemption provision for certain types of actions. That preemption provision—section 4(a) of the ADA (now codified at 49 App.U.S.C. § 1305(a)(1)) reads, in relevant part:

> (a) Preemption
>
> (1) Except as provided in paragraph (2) of this subsection [concerning air transportation within Alaska], no State or political subdivision thereof shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law *relating to rates, routes, or services of any air carrier* having authority under subchapter IV of this chapter to provide air transportation.

49 App.U.S.C. § 1305(a)(1) (emphasis added).

## D. THE MORALES DECISION

Last June, the Supreme Court decided *Morales v. Trans World Airlines, Inc.,* —— U.S. ——, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992), the first case presented to the Supreme Court for interpretation of the scope of the FAA's preemption provision. *Morales* involved the question of whether state regulation of airline fare advertisements "relating to rates, routes or services" such that it was preempted under § 1305(a)(1).[9] The Su-

---

8. Although a number of federal district and circuit courts have been called upon to address the question of FAA "preemption," the majority of the cases do not involve challenges to removal. Rather, most of the FAA preemption cases involve application of preemption as an affirmative defense in the context of a motion to dismiss or for summary judgment.

9. *Morales* did *not* present a removal issue. *Morales* began its route through the lower courts

under the case caption, *TWA v. Mattox. See, Trans World Airlines, Inc. v. Mattox,* 712 F.Supp. 99 (W.D.Tex.1989), *aff'd,* 897 F.2d 773 (5th Cir. 1990). (Jim Mattox was Dan Morales's predecessor as Attorney General for the State of Texas.)

A case *was* filed by Attorney General Mattox in Texas state court, *State of Texas v. Pan American World Airways, Inc.,* and that case *was* removed to Federal District Court for the Northern Dis-

preme Court stated that the key to answering that question was the meaning to be ascribed to the phrase "relating to". —— U.S. at ——, 112 S.Ct. at 2037.

Having set out that narrow issue, the Court determined that the phrase "relating to" in the FAA preemption provision should be given the same broad interpretation that the Court has given to that phrase in the ERISA context. The Court explained:

> For purposes of the present case, the key phrase, obviously, is "relating to." The ordinary meaning of these words is a broad one—"to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with," Black's Law Dictionary 1158 (5th ed. 1979)—and the words thus express a broad pre-emptive purpose. We have repeatedly recognized that in addressing the similarly worded preemption provision of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1144(a), which pre-empts all state laws "insofar as they ... relate to any employee benefit plan." We have said, for example, that the "breadth of [that provision's] pre-emptive reach is apparent from [its] language", that it has a "broad scope", and an "expansive sweep"; and that it is "broadly worded", "deliberately expansive", and "conspicuous for its breadth". True to our word, *we*

*have held that a state law "relates to" an employee benefit plan, and is pre-empted by ERISA, "if it has a connection with or reference to such a plan." Since the relevant language of the ADA [Airline Deregulation Act] is identical, we think it is appropriate to adopt here: State enforcement actions having a connection with or reference to airline "rates, routes, or services" are pre-empted under 49 U.S.C.App. § 1305(a)(1).*

—— U.S. at ——, 112 S.Ct. at 2031 (citations omitted and emphasis added.)

Although the Court determined that the state deceptive advertising actions at issue in *Morales* were preempted under the FAA because they had "a connection with or reference to" airline rates, the Court was quick to caution that not all state law actions affecting airline fares would necessarily be preempted. The Court explained:

> In concluding that the NAAG fare advertising guidelines are pre-empted, we do not, as Texas contends, set out on a road that leads to pre-emption of state laws against gambling and prostitution as applied to airlines. Nor need we address whether state regulation of the nonprice aspects of fare advertising (for example state laws preventing obscene depictions) would similarly "relate to" rates; the connection would obviously be far more tenu-

trict of Texas, in Dallas. Mattox moved to remand the case to state court but his remand motion was denied. That Northern District of Texas case was subsequently transferred to the Western District of Texas for consolidation with the case filed by TWA in that court. The propriety of removal of the case filed by the attorney general in state court was cursorily addressed by the Fifth Circuit Court of Appeals in five paragraphs of its 15–page decision affirming the district court's 1989 decision granting a preliminary injunction and allowing the intervention of 33 other state attorneys general and 10 other airlines.

However, the removal issue actually became *moot* before the case came before the Supreme Court because the district court in the Western District of Texas permitted state-court defendant, Pan Am to *intervene* in the case filed by TWA, and the Fifth Circuit affirmed the district court's action on April 3, 1990. *See,* 712 F.Supp. 99, 104–105; 897 F.2d 773, 786–787.

The Supreme Court denied Attorney General Mattox's first petition for a writ of certiorari of the Fifth Circuit's affirmance of the district

court's preliminary injunction/intervention order on October 15, 1990. The case went back to the district court where the district judge granted summary judgment in favor of all 10 airlines and entered an order *permanently* enjoining all 33 state attorneys general from "initiating or enforcing any provision of state law which would seek to regulate or restrict any aspect of the individually named Plaintiff airlines air fare advertising or their other operations involving their rates, routes and/or services." The attorneys general then appealed that "final" order and the Fifth Circuit once again affirmed. *See, Trans World Airlines, Inc. v. Morales,* 949 F.2d 141 (5th Cir. 1991).

By this time, however, as indicated above, removal was no longer an issue because consolidation of the removed case had already become moot by the intervention of Pan Am in the TWA action. Thus, when the Supreme Court granted certiorari to review this permanent injunction "final" order, removal was not an issue, therefore, it is not addressed in the Supreme Court's *Morales* decision.

ous. *To adapt to this case our language in Shaw [v. Delta Air Lines, Inc., 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)]* "some state actions may affect [airline fares] in too tenuous, remote, or peripheral a manner" to have preemptive effect. *463 U.S. at 100, n. 21, 103 S.Ct. at 2901, n. 21.* In this case, as in *Shaw,* "the present litigation plainly does not present a borderline question, and we express no views about where it would be appropriate to draw the line." *Ibid.*

—— U.S. at ——, 112 S.Ct. at 2040 (emphasis added).[10]

The Court's first task, therefore, in this case is to determine whether Plaintiffs' claims, or any of them, "relate to rates, routes, or services" in more than a "tenuous, remote or peripheral a manner."

## E. FAA PREEMPTION AND REMOVAL OF THIS CASE

At the outset, the Court is able to eliminate two of the three categories covered by § 1305(a)(1) in that it is undisputed that none of Plaintiffs' claims relate to "rates" or "routes". Therefore, the specific question is whether Plaintiffs' claims relate to "services" in more than a "tenuous, remote or peripheral a manner." As indicated above, Plaintiffs assert four substantive claims in their Complaint—three claims of negligence/gross negligence and one claim of deceptive advertising.

Plaintiffs' first substantive Complaint claim is Count V. In that count Plaintiffs charge Northwest with *negligence* in failing to adequately train or instruct the crews of the colliding planes in such areas as understanding the use of equipment, operating in low visibility conditions, taking proper precautions on the runway, and ensuring that the captain understood the operation of the equipment he was using.

In Plaintiffs' second substantive claim, Count VI, Plaintiffs seek *punitive damages* for Northwest's *gross negligence* alleging that Northwest's conduct in connection with the collision amounted to a conscious disregard for the rights, welfare and safety of its passengers.

In Count VII—Plaintiffs' third substantive claim—Plaintiffs charge Pilot Ouellette individually with *negligence* for failure to exercise ordinary care and prudence while functioning as the captain of an aircraft. Specifically, Plaintiffs allege, by way of example, that Ouellette was negligent in that he failed to abort takeoff in weather conditions which they claim were below minimum for takeoff on the runway in use at Detroit Metro.

Plaintiffs' last substantive claim, Count VIII, charges Northwest with *deceptive trade practices* in that the airline represented to the American public through its advertising that it could provide a safe and reliable means of transportation and that it employed competent, well-trained individuals to operate its aircraft.

**10.** Among the arguments raised by the attorneys general before the Supreme Court in *Morales* was one that Plaintiffs in this case make—i.e., that the FAA "savings" clause, 49 App.U.S.C. § 1506, which preserves "the remedies now existing at common law or by statute" should be deemed determinative of the "non-preemption" of their state law claims, superseding and, effectively, nullifying the "rates, routes or services" preemption in § 1305(a)(1). The Supreme Court flatly rejected that argument in *Morales,* explaining:

> Petitioner also stresses that the FAA "saving" clause, which preserves "the remedies now existing at common law or by statute, is broader than its ERISA counter part. But it is a commonplace of statutory construction that the specific governs the general (a canon particularly pertinent here, where the "saving" clause is a relic of the pre-ADA/no pre-emption

regime). *A general "remedies" saving clause cannot be allowed to supersede the specific substantive pre-emption provision.... [W]e do not believe Congress intended to undermine this carefully drawn statute through a general saving clause.*

—— U.S. at ——, 112 S.Ct. at 2037 (citations and some punctuation omitted; emphasis added.)

To the extent that Plaintiffs' Motion to Remand is predicated upon the "savings clause" in § 1506, the Court is compelled to reject that argument.

However, the Court finds that because Congress did not do away with the "savings" clause when it amended the FAA and added the "rates, routes and services" preemption provision in § 1305(a)(1), this is further indicia that Congress did not intend that actions that only relate to rates, routes or services in a tenuous, remote or peripheral a manner be preempted.

### 1. The Relation of Plaintiffs' Claims to § 1305 Airline "Services"

As an initial matter, the Court must determine the scope of "services" as used in § 1305(a)(1). *Morales*—which dealt with a state action relating to "rates"—did not address the "scope of 'services'" issue.[11] In fact, very few reported cases address this issue.

The District Court for the Southern District of Texas addressed the "scope of services" issue in *Stewart v. American Airlines, Inc.,* 776 F.Supp. 1194 (S.D.Tex.1991). In that case, Douglas Stewart, the plaintiff, filed an action in Texas state court alleging only state law tort claims. Stewart was a passenger on an American Airlines flight # 4856 from New York to Washington, D.C. At some point during the flight, the aircraft suffered a deflated nose wheel. The airplane jolted which caused Stewart to be jostled back and forth, which, in turn, resulted in injuries to his neck.

In his negligence complaint, Stewart alleged, in particular, that the defendants— American Airlines and its regional carrier AMC Corporation—were negligent in failing to properly maintain their aircraft, failing to correct unsafe conditions, and in transporting passengers on a regional carrier which did not properly maintain its aircraft. 776 F.Supp. at 1196–1197.

The airlines removed Stewart's action to federal court on the basis of complete preemption under the Section 105 of the FAA contending that Stewart's negligence claims related to "services". As evidence of preemption, the defendants pointed to the numerous FAA regulations pertaining to aircraft operation and maintenance. 776 F.Supp. at 1199.

On the plaintiff's motion to remand, the *Stewart* court held that the action did not relate to services, and therefore, was not preempted under the FAA. In reaching that conclusion, the court began with a discussion of Fifth Circuit's opinion in *Trans World Airlines v. Mattox, supra* (which dealt with airline fare advertising), and then reviewed and compared other negligence/personal injury cases in which the courts held that the plaintiffs' claims related to airline services. The court explained:

> Airline fare advertising necessarily concerns airline "rates," and thus, State laws regulating such advertising necessarily relate to airline "rates" within the meaning of Section 1305.
>
> By contrast, it is far from clear that, in the instant case, Plaintiff's claims relate to "services" within the meaning of Section 1305. First, those cases which have held that a Plaintiff's claims were claims relating to "services" and therefore pre-empted by Section 1305 all involved services provided by individual airline employees *directly* to passengers, such as ticketing, boarding, in-flight service, and the like. For example, in *O'Carroll v. American Airlines, Inc.,* [863 F.2d 11 (5th Cir.1989), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3158, 104 L.Ed.2d 1021 (1989)], the Plaintiff asserted various State law claims arising from his allegedly wrongful exclusion from an airline flight for which he had a valid ticket. The Fifth Circuit, relying on Section 1305 and on the fact that the FAA both [statutorily] grants air carriers broad discretion to refuse transportation of passengers[12] and include[d] [at the time] a private right of action for abuse of such discretion, held that Plaintiff's claims were pre-empted by the FAA, and that consequently the District Court lacked subject matter jurisdiction. *Id.* at 12–13.
>
> Similarly, in *Smith v. America West Airlines,* [Civ. Act. No. H–91–1550, Sept. 3, 1991, 1991 WL 296832 (S.D.Tex.)], the Plaintiffs asserted claims for negligence and gross negligence for injuries they re-

**11.** The Supreme Court's decision in *Morales* turned on the relation of the state deceptive advertising actions to "rates". The Court expressly declined to reach "non-rate" aspects of airline advertising, but noted that the relation of non-rate advertising to "rates" would probably in most cases be tenuous. ("Nor need we address whether state regulation of the nonprice aspects of fare advertising … would similarly 'relate to' rates; the connection would obviously be far more tenuous." —— U.S. at ——, 112 S.Ct. at 2040.)

**12.** See 49 App.U.S.C. § 1511(a).

ceived in the course of a hijacking. This Court held that the Plaintiffs claims, which were essentially that the Defendants were negligent in ticketing and boarding the hijacker, were pre-empted by Section 1305. *See also, Anderson v. USAir,* 818 F.2d 49, 57 (D.C.Cir.1987) (State law obligation to provide courteous service pre-empted by FAA); *Von Anhalt v. Delta Air Lines, Inc.,* 735 F.Supp. 1030, 1031 (S.D.Fla.1990) (State law claims for negligence, defamation and assault and battery arising out of passenger's removal from aircraft pre-empted by FAA). By contrast, Plaintiff's claims do not arise out of the allegedly negligent performance of such [direct] "services". Moreover, assuming, *arguendo,* that Defendant's argument is correct, it *would appear to follow that most, if not all,* State law claims arising out of an air crash would be pre-empted, since most such cases involve claims similar to those at issue in the instant case, namely that a Plaintiff or a Plaintiff's decedent was a passenger on a flight and was injured in the course of a flight due to a crash caused by the airline's negligence. Several courts have held that such claims are not pre-empted. *Air Crash Disaster at John F. Kennedy Int'l Airport,* 635 F.2d 67, 74 (2d Cir.1980) (compensatory damages not pre-empted); *In re Air Crash Disaster at Sioux City, Iowa,* 734 F.Supp. 1425, 1428 (N.D.Ill.1990) (punitive damages not pre-empted); *In re Air Crash Disaster at Stapleton Int'l Airport,* 721 F.Supp. 1185, 1187 (D.Colo.1988).

In the instant case, Plaintiff's claims are more like those arising out of an air-crash.... *Plaintiff does not allege that Defendant negligently provided such [direct] services as boarding, ticketing, and the like. Rather, he simply alleges* that he was injured when the airplane malfunctioned during the course of his flight, and *that Defendants' negligent maintenance*

*and operation was the legal and proximate cause of his injuries.*

776 F.Supp. at 1197–1198 (emphasis added).

The *Stewart* court acknowledged the extensive FAA regulation of the operation and maintenance of aircraft but was not persuaded that extensive regulation mandated a finding of preemption:

> While the FAA does extensively regulate the operation and maintenance of aircraft, Plaintiff's Complaint, on its face, does not attempt to hold Defendants to a different standard of care than that prescribed by the FAA.

776 F.Supp. at 1198.

Thus, the *Stewart* court determined that the plaintiff's claims were not pre-empted under the FAA.[13]

In *Margolis v. United Airlines, Inc.,* 811 F.Supp. 318 (E.D.Mich.1993), this Court's colleague, Judge Edmunds, was called upon to determine whether a plaintiff's negligence claims arising from injuries she sustained when a luggage carrier fell from an overhead bin and struck her on the head related to "services" within the meaning of Section 105 of the FAA.[14]

In *Margolis,* Judge Edmunds addressed the issue of whether the plaintiffs' negligence claims related to "services" within the meaning of Section 1305 by examining the legislative history of the Airline Deregulation Act amendments to the FAA, of which section 1305 was a part. *Id.* at 320. Judge Edmunds then went on to scrutinize the interpretation of the Civil Aeronautics Board—the regulatory agency responsible for FAA enforcement—regarding section 1305 following its enactment:

> In promulgating regulations pursuant to the Airline Deregulation Act, the Civil Aeronautics Board focused on the two underlying purposes of the Act—to prevent state economic regulation from frustrating the benefits of federal deregulation, and to

---

**13.** Because the Court found that the plaintiff's claims were not preempted by the FAA, it was unnecessary to proceed with the second prong of the "complete preemption" test. *See* 776 F.Supp. at 1196.

**14.** The *Margolis* case did not involve any removal issue. That case came before the federal court on the basis of diversity of citizenship, *not* complete preemption under the FAA. The preemption issue was raised in the defendants' motion to dismiss.

clarify the confusion under the prior law which permitted some dual state and federal regulation of the rates and routes of the same carrier. 44 Fed.Reg. 9948–49 (1979). The Board thus explained that:

Section 105 forbids state regulation of a federally authorized carriers routes, rates, or services. Clearly, states may not interfere with a federal carrier's decision on how much to charge or which markets to serve.... *Similarly, a state may not interfere with the services that carriers offer in exchange for their rates and fares. For example, liquidated damages for bumping (denial of boarding), segregation of smoking passengers, minimum liability for lost, damaged, and delayed baggage, and ancillary charges for headsets, alcoholic beverages, entertainment, and excess baggage would clearly be "service" regulation within the meaning of section 105.*

Additionally, we conclude that regulation of capital structure, minimum insurance requirements, bonding, etc., motivated by a desire to protect the quality of service is included within the preemption imposed in section 105.

*Id.* at 9951. A state common law claim based on negligence and the standard of reasonable care does not purport to regulate the services that air carriers provide to their customers in exchange for their fares. The common law of negligence does not hold the airlines to a different standard of care from that provided by the Federal Aviation Act and related regulations.[15] Further, nowhere in the legislative history or in the evolution of the statute is there any suggestion that the preemption provi-

sion of the Airline Deregulation Act was intended to preclude common law negligence actions.

*Id.* at 320–321 (emphasis added).

Thus, the court held that preemption under section 1305(a) does not apply to Margolis's common law negligence claims. *Id.* at 322.

■ This Court finds the analysis of the *Stewart* and *Margolis* courts persuasive. Like *Stewart* and *Margolis,* this case presents three common law negligence/gross negligence claims. And, like those cases, and the other cases discussed by the *Stewart* court, this case does not deal with negligence arising out of "direct contact" between the plaintiff and individual airline "service" employees such that the negligence claims relate to airline "services" in a more direct manner. Rather, in this case, it appears to this Court that the Plaintiffs' negligence/gross negligence claims relate to airline services in "too tenuous, remote or peripheral" a manner to warrant preemption under Section 1305.

The Court acknowledges that there are detailed and extensive regulations regarding training of crews, operation at airports with control towers, and collision avoidance precautions, all of which are implicated in Plaintiffs' three negligence/gross negligence counts.[16] However, Plaintiffs do not allege in their Complaint that the Defendants should be held to a different standard of care than that prescribed in the regulations, such that preemption due to a "conflict between state and federal law" arises. *See Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132,

---

**15.** The *Margolis* court noted the extensive FAA regulatory scheme regarding the operation and maintenance of aircraft as well as the training of airline employees. But after examining those regulations, the court concluded—as did the *Stewart* court—that "state law regarding negligence does not attempt to hold United Airlines to a different standard of care from that prescribed by the Federal Aviation Act and the corresponding regulations." *Id.* at 324 n. 5.

**16.** The regulations at 14 C.F.R. part 91 **(General Operating and Flight Rules)** include the following: § 91.13 (Careless or reckless operation), § 91.111 (Operating near other aircraft), § 91.113 (Right of way rules: Except water opera-

tions), and § 91.129 (Operation at airports with operating control towers). The regulations at 14 C.F.R. part 61, subpart E **(Commercial Pilots)** provide: § 61.123 (Eligibility requirements: General), and § 61.127 (Flight Proficiency, including collision avoidance precautions). 14 C.F.R. part 61 **(Certification: Pilots and flight instructors)** entails the following provisions: § 61.13 (Application and qualification), § 61.35 (Written test: Prerequisites and passing grades), § 61.39 (Prerequisites for test), § 61.43 (Flight test general procedures), § 61.57 (Recent flight experience: Pilot in command), and § 61.58 (Pilot in command proficiency check).

142–143, 83 S.Ct. 1210, 1217–1218, 10 L.Ed.2d 248 (1963). Thus, the Court does not find, from the record as it presently exists in this case, a sufficient basis for finding that Plaintiffs' negligence and gross negligence claims are preempted under Section 105(a)(1) of the FAA.[17]

### 2. Even Assuming Arguendo that the FAA Preempt Plaintiffs' State Law Claims, Removal is Not Proper

■ However, even assuming *arguendo* that the Court would find that Plaintiffs' claims sufficiently relate to airline "services" within the meaning of Section 1305, as discussed above, because we are dealing with *removal* under the *complete* preemption exception to the well-pleaded complaint rule, the Court's analysis would not be over. In addition to finding that Plaintiffs' claims are preempted under Section 1305, the Court must go on to determine whether there is sufficient indication in the FAA or its legislative history of Congress's intent to make the Plaintiffs' cause of action removable to federal court. As indicated above, only a few courts have reached this issue. The Court finds particularly persuasive one of those cases, *Corporate Travel Consultants v. United Airlines, Inc.*, 799 F.Supp. 58 (N.D.Ill. 1992).

The *Corporate Travel Consultants* case involved claims under Illinois state anti-trust laws predicated upon United Airlines' refusal to give discounts to travel agencies which would not use a computer reservations system designed by United. United removed the case to federal court alleging as the basis for removal complete preemption under Section 105 of the FAA. Noting that "[t]he Supreme Court has decided [in *Metropolitan Life Ins. Co. v. Taylor*] that complete preemption requires both federal preemption of state law and the Congressional intent to make the plaintiff's cause of action removable to federal court," 799 F.Supp. at 61, the *Corporate Travel Consultants* court began with FAA preemption. The court found that

the plaintiff's claims did fall within the scope of Section 1305 by application of *Morales:*

> Defendant first argues that the Airline Deregulation Act of 1978 preempts the Illinois Antitrust Act, because plaintiff's cause of action relates to rates. The court agrees.... Given the broad meaning which has been given the terms "relates to" [by the *Morales* Court], the court finds that this action relates to airline rates. The Illinois Antitrust Act, which governs anticompetitive behavior will have the force and effect of law relating to rates of United because United's challenged anticompetitive behavior involves the particular rates charged by United [to the plaintiffs.]

*Id.* at 62.

But the court's finding of preemption under Section 1305 was not enough to resolve the complete preemption removal issue. The defendants argued that Congressional intent to "completely preempt" the plaintiff's cause of action was evidenced by the House Report regarding Section 1305's "rates, routes, or services" preemption which stated that

> [i]n addition to protecting consumers, federal regulation insures a uniform system of regulation by the states. If there was no Federal regulation, the states might begin to regulate these areas, and the regulations could vary from state to state. This would be confusing and burdensome to airline passengers, as well as to the airlines.

*Id., quoting,* H.R. No. 793, 98th Cng., 2d Sess. 4 (1984), *reprinted in* 1984 U.S.C.C.A.N. 2857, 2860.

The court disagreed:

> The question presented is whether this language in the legislative history of the Federal Aviation Act, the preemption provision in the Deregulation Act and the availability of a federal cause of action under the Sherman Anti–Trust Act is enough from which to conclude that Con-

---

**17.** With respect to Plaintiffs' deceptive trade practices claim, it appears that Plaintiffs concede the effect that *Morales* has on this claim for they have moved to voluntarily dismiss that claim. However, until the Court determines that it has jurisdiction over this action, it cannot act on Plaintiffs' Motion to Dismiss.

Similarly, the Court cannot act on Northwest's motion for leave to file a third-party complaint. See discussion in note 20 *infra.*

gress intended to make plaintiff's cause of action removable to federal court. Because the Supreme Court has expressed reluctance to invoke the complete preemption doctrine, it is necessary to compare this case to the areas and cases where this doctrine has been applied. Defendant has not pointed out, and the court does not find, any jurisdictional language in the Deregulation, Federal Aviation or Sherman Anti–Trust Acts similar to the language quoted above from ERISA [Section 502] and the LMRA [Section 301].

*Id.* at 63.

The court then went on to discuss the weakness of the defendant's reliance upon the Fifth Circuit's decision in *Trans World Airlines, Inc. v. Mattox,* 897 F.2d 773 (5th Cir.1990), *aff'd in part, rev'd in part sub nom, Morales v. Trans World Airlines,* —— U.S. ——, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) [18]—which is the one of the cases that Defendants here rely upon:

> Defendant has mainly relied upon *Trans World Airlines, Inc. v. Mattox,* 897 F.2d 773 (5th Cir.1990), *aff'd in part, rev'd in part sub nom, Morales v. Trans World Airlines,* —— U.S. ——, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) (did not address complete preemption issue).... In *Mattox,* the Fifth Circuit stated that "Congress did intend to preempt so completely the particular area of state laws 'relating to rates, routes, or services' as to preclude state court actions." 897 F.2d at 787. There, the court decided that a complaint filed in state court which alleged a violation of the Texas Deceptive Trade Practices Act through deceptive advertising of air fares, was completely preempted by the Airline Deregulation Act. *See id.* at 787–788.

> \* \* \* \* \* \*

> *[T]he court is not convinced by the reasoning in Mattox. There, the Fifth Circuit did the initial preemption analysis but not the second part of the analysis. The court emphasized the express preemption provision in the Deregulation Act, see Mattox, 897 F.2d at 787–788, and did not analogize to the LMRA, ERISA, or the*

*Supreme Court cases involving complete preemption. The court did examine in some detail the legislative history of civil aviation. See id. at 776–778 (quoting H.R. No. 793, 98th Cong., 2d Sess. 4 (1984), reprinted in 1984 U.S.C.C.A.N. 2857, 2860, which is also quoted supra). That legislative history, however, simply demonstrates Congress' intent to preempt state regulation, not Congress' intent to make state causes of action removable to federal court.*

*Id.* (emphasis added).

Thus, the court concluded that the defendant had improperly removed the case to federal court, explaining:

> The Supreme Court has been reluctant to extend the complete preemption doctrine. Indeed, the doctrine is an exception to the well-pleaded complaint rule, and exceptions, by their very nature, should be construed narrowly. Defendant has failed to show Congress' intent to completely preempt the Illinois Antitrust Act through the enactment of the Airline Deregulation, the Federal Aviation and the Sherman Anti–Trust Acts.

> For the foregoing reasons, plaintiff's motion to remand is granted.

*Id.*

As indicated above in this Opinion and Order, this Court finds that the *Corporate Travel Consultants* court accurately followed the rules set down by the Supreme Court in *Metropolitan Life v. Taylor.* As discussed above, the Supreme Court in *Taylor,* in deciding the issue of whether the complete preemption doctrine—developed by the Court in *Avco v. Aero Lodge No. 735* with respect to the LMRA—should be extended to ERISA so as to render purely state law claims removable to federal court, first noted the "strong preemptive force" of ERISA, but explained that federal preemption was not, in itself, enough to render the plaintiff's state law claims removable. The Court held that there had to be some evidence of congressional intent to make such claims removable in either the statute itself or in the legislative history. In *Taylor,* the Court found such

---

**18.** See discussion in note 9, *supra.*

congressional intent in two places—(1) the "jurisdictional" provision of the ERISA statute itself, which provides that "[t]he district courts of the United States shall have jurisdiction" over claims arising under ERISA, 29 U.S.C. § 1132(f); and (2) in the clearly stated legislative history that ERISA be treated just like Section 301 of the LMRA.

No analogous statutory provision nor any similar clearly stated legislative history exists with respect to the FAA or the ADA. Therefore, by application of the clear instructions of the Supreme Court in *Taylor* and the other authorities cited above, this Court finds that Plaintiffs' Motion to Remand must be granted.[19]

## VI.  CONCLUSION

For all of the foregoing reasons,

19. This Court feels compelled to express its policy disagreement with the evolution of the "complete preemption" doctrine as it has developed in removal cases. The statute governing removability, 28 U.S.C. § 1441 provides in pertinent part:
(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending.
(b) *Any civil action* of which the district courts have original jurisdiction *founded on a claim or right arising under the* Constitution, treaties, or *laws of the United States shall be removable* without regard to the citizenship or residence of the parties.
*See also*, 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States.")
This Court believes that the complete preemption doctrine should be viewed as one which arises when Congress manifests an intent to so completely replace state law and regulations in a given area that federal court subject matter jurisdiction exists as a matter of federal question under the traditional test pursuant to 28 U.S.C. § 1331 as a matter of course.
In this Court's view, it is neither sound jurisdictional policy nor in compliance with Sections 1331 and 1441 of Title 28, which govern the original jurisdiction of federal district courts and the removability of actions to federal courts, for a court to be able to find that Congress intended for federal law to replace state law, and yet hold that for purposes of removal, the action does not "arise under the laws of the United States" such

IT IS HEREBY ORDERED that Plaintiff's Motion to Remand be, and hereby is, GRANTED.[20]

## OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR STAY AND RECONSIDERATION OF THE COURT'S APRIL 6, 1993 RULING, AND ORDER REMANDING CASE TO U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS WITH INSTRUCTIONS TO REMAND ACTION TO TEXAS STATE COURT

### BACKGROUND

On April 6, 1993, the Court entered an "Opinion and Order Granting Plaintiffs' First Amended Motion to Remand". [See page 1352.] In that Opinion and Order, the Court held that Defendants had improperly removed Plaintiffs' Texas state-law negligence

that a defendant cannot bring that case to federal court. If the action presents enough of a "federal question" to support a finding that state law claims were intended by Congress to be replaced by federal law, then, this Court believes that, as a matter of statutory construction and jurisdictional policy, the action should be removable to federal court. Indeed, this Court believes that this was the statutory construction and jurisdictional policy intended at the inception of the "complete preemption" doctrine in *Avco, supra*.
However, as the "complete preemption" doctrine has evolved through the case law, it appears to this Court that statutory construction and jurisdictional policy has been supplanted by purely "judge-made law" for the policy reason of limiting access to federal courts. Although the policy of limiting access to the federal courts may well be laudable, it is not sound jurisdictional policy, at least so far as the governing jurisdiction and removal statutes currently provide.
Nonetheless, that "judge-made law" is precedent, and therefore, despite the Court's policy-rooted beliefs, it is compelled to follow and apply that precedent.

20. With respect to Defendant Northwest's Motion for Leave to File a Third–Party Complaint against the Government for negligence on the part of the air traffic controller on duty the date of the accident, as indicated in note 17 *supra*, having no subject matter jurisdiction over this action, the Court is without jurisdiction to consider Northwest's Motion. If the state court permits Defendants to file their third-party complaint against the United States, federal jurisdiction most likely will be established pursuant to 28 U.S.C. § 1346(b), and Defendants will then be entitled to re-remove this action.

and deceptive trade practices action to federal court on the basis of "complete preemption" under the Federal Aviation Act.

The Court determined that application of the "complete preemption" doctrine called for a two-step analysis: First, whether Plaintiffs' claims were preempted under the FAA, and second, whether the statute or its legislative history evidenced Congress's intent to make causes of action such as Plaintiffs' claims removable to federal court. The Court determined that the answer to both of those questions is "no" and, therefore, concluded that Defendants' removal of the action to federal court had been improper. Accordingly, the Court ordered the case remanded to Texas state court.

## DEFENDANTS' RECONSIDERATION ARGUMENTS

Defendants have now moved for reconsideration of the April 6, 1993 Opinion and Order. Defendants make three arguments in support of their reconsideration motion.

First, Defendants argue that the Court failed to specifically consider Plaintiffs' claim of deceptive advertising under the Texas Deceptive Trade Practices Act and the specific effect of the Supreme Court's ruling in *Morales v. Trans World Airlines, Inc.,* — U.S. ——, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) on that particular claim. Defendants contend that *Morales* mandates the conclusion that Plaintiffs' deceptive advertising claim is preempted under the FAA.

Defendants' second reconsideration argument is that the Court failed to separate Plaintiffs' negligence claim against Robert Ouellette, the pilot of the aircraft, from Plaintiffs' negligence claims against Northwest Airlines. Defendants argue that because Plaintiffs have alleged separate claims against the pilot, individually, and Northwest, the Court erred in concluding that Plaintiffs' negligence claims (collectively) related to airline services in too tenuous and remote a manner to be preempted under the FAA because no "direct" airline employee to customer services were involved.

Lastly, Defendants argue that the Court erred by rejecting the Fifth Circuit's determination of proper removal under FAA complete preemption in *Trans World Airlines, Inc. v. Mattox,* 897 F.2d 773 (5th Cir.1990). Defendants contend that this Court is obligated to adhere to the Fifth Circuit's propriety of removal ruling in *Mattox* because *Mattox* is the law of the transferor forum.[1]

The Court will address each of Defendants' three arguments separately.

## DISCUSSION

The grounds for the granting of motions for reconsideration are set forth in Eastern District of Michigan Local Rule 7.1(h)(3):

**(h) Motions to Alter or Amend a Judgment or for Rehearing or Reconsideration.**

**(3) Grounds.** Generally, and without restricting the discretion of the Court, motions for rehearing or reconsideration which merely present the same issues ruled upon by the Court, either expressly or by reasonable implication, shall not be granted. *The movant shall not only demonstrate a palpable defect by which the Court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof.*

L.R. 7.1(h)(3) [emphasis added.]

The Court will apply these standards in deciding the instant motion.

### A. *MORALES* DOES NOT REQUIRE A DETERMINATION THAT PLAINTIFFS' DECEPTIVE ADVERTISING CLAIM WAS PROPERLY REMOVED UNDER THE "COMPLETE PREEMPTION" DOCTRINE

As discussed above, Plaintiffs' first reconsideration argument is that by application of the Supreme Court's recent decision in *Morales v. Trans World Airlines, Inc., supra,* this Court must find that Plaintiffs' deceptive advertising claim in this action is preempted under the FAA, and therefore, the Court

---

1. This multi-district litigation case was transferred from the U.S. District Court for the South- ern District of Texas pursuant to 28 U.S.C. § 1407.

must reverse its April 6, 1993 remand ruling. Defendants are mistaken.

The Court explained in its April 6, 1993 Opinion and Order that *Morales* involved the very narrow specific question of whether state regulation of airline *fare* advertising related to airline "rates", such that it was preempted under 49 App. U.S.C. § 1305(a)(1).[2] In fact, the *Morales* court *expressly declined to reach "non-rate" aspects of airline advertising,* which is what we are presented with in this case. *See* —— U.S. at ——, 112 S.Ct. at 2040.

Here, Plaintiffs' Texas Deceptive Trade Practices Act claim has nothing to do with airline "rates" or "fares". Rather, Plaintiffs' claim is that Northwest falsely advertised to the American public that it could provide a safe and reliable means of transportation and that it employed competent, well-trained individuals to operate its aircraft. Plaintiffs' claim, thus, is clearly not identical to the deceptive advertising claim at issue in *Morales.*

Moreover, this Court did, in fact, apply the ruling of *Morales* in reaching its no-preemption determination in the April 6, 1993 Opinion and Order. [See April 6, 1993 Opinion and Order, pp. 1358–64.] As the *Morales* court held, the standard to · be applied by courts addressing the FAA preemption "relates to rates, routes or services" issue is whether a challenged state action relates to rates routes or services in more than a "tenuous, remote or peripheral a manner". —— U.S. at ——, 112 S.Ct. at 2040.

The Court acknowledges that it did not include Plaintiffs' deceptive advertising claim in its discussion finding that Plaintiffs' claims related to airline "services" in "too tenuous, remote, and peripheral" a manner to warrant preemption under the FAA because it appeared from the posture of the pleadings, motions, briefs and correspondence submitted since the June 23, 1992 hearing on this

matter that the parties had withdrawn their arguments regarding this claim. The Court further acknowledges that it would appear that Plaintiffs' false advertising claim may arguably "relate to" airline services in more than a "tenuous, remote and peripheral" a manner.

██ However, as the Court explained at pp. 1364–66 of its April 6, 1993 Opinion and Order, even assuming *arguendo* that Plaintiffs' claims sufficiently relate to airline "services" within the meaning of Section 105 of the FAA so as to warrant a finding of FAA preemption, that determination does not equate with a determination of "complete" preemption; it is only the first step of a two-step process. The critical determination for purposes of *removal* under the "complete preemption" doctrine—which is what we are dealing with in this case—is whether there is any showing in the FAA statute, regulations or legislative history to show Congress's intent to make state causes of action removable to federal court. As this Court explained in its April 6, 1993 Opinion and Order, such a showing is lacking with respect to the FAA.

B. THAT PLAINTIFFS SUED BOTH NORTHWEST AND AN INDIVIDUAL PILOT SEPARATELY FOR NEGLIGENCE DOES NOT MANDATE A REVERSAL OF THE COURT'S DETERMINATION THAT PLAINTIFFS' NEGLIGENCE CLAIMS [PLURAL] RELATE TO AIRLINE SERVICES IN TOO TENUOUS, REMOTE AND PERIPHERAL A MANNER.

Defendants' second reconsideration argument is that the Court erred in not considering Plaintiffs' negligence claim against Pilot Robert Ouellette separately from the negligence claims against the airlines.

In the April 6, 1993 Opinion and Order, the Court treated all of the Plaintiffs' negli-

---

2. 49 App.U.S.C. § 1305(a)(1)) reads, in relevant part:
  (a) Preemption
    (1) Except as provided in paragraph (2) of this subsection [concerning air transportation within Alaska], no State or political subdivision shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law *relating to rates, routes, or services of any air carrier* having authority under subchapter IV of this chapter to provide air transportation.
  49 App.U.S.C. § 1305(a)(1) (emphasis added).

gence/gross negligence claims collectively and determined that they related to airline services in "too tenuous, remote and peripheral" a manner because they did not relate to services provided by individual airline employees *directly and personally* to passengers. In reaching that conclusion, the Court found persuasive the analysis of *Stewart v. American Airlines, Inc.,* 776 F.Supp. 1194 (S.D.Tex.1991) and *Margolis v. United Airlines, Inc.,* 811 F.Supp. 318 (E.D.Mich.1993).

Defendants argue that *Stewart* and *Margolis* should be distinguished because no individual airline employees were named as party defendants in either of those cases. The Court is not persuaded by Defendants' argument. In fact, as the Court noted in discussing *Stewart,* the Texas District Court's decision was based upon its comparison of piloting/maintenance negligence cases—such as this action—and a number of other airline negligence cases which, although they did not have *named* individual employees as *party defendants,* arose out of allegations of negligent conduct of individual airline employees in *direct* dealings with the plaintiffs. No such direct dealings are involved in this case.

Further, with respect to Defendants' reliance upon District Court for the Western District of Tennessee recent holding in *Williams v. Express Airlines I, Inc.,* No. 90-2173-4/B (W.D.Tenn.1993) (April 9, 1993 Order), Defendants appear to overlook that this Court utilized the very same preemption analysis that the *Williams* court did, i.e., "whether the [plaintiff's] claim's effect is "too tenuous, remote or peripheral." *Id.* at 4.

Further, the *Williams* court's conclusion that the plaintiff's claims in that case were preempted is entirely consistent with this Court's April 6, 1993 "direct" employee contact analysis. Unlike this case, *Williams* involved claims of false imprisonment arising out of direct restraint of the plaintiff by individual airline employees. Thus, the case is virtually identical to those "direct" employee negligence cases compared and contrasted in *Stewart,* which this Court discussed at pp. 1361–62 of its April 6, 1993 Opinion and Order. *See, O'Carroll v. American Airlines, Inc.,* 863 F.2d 11 (5th Cir.1989), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3158, 104 L.Ed.2d

1021 (1989), (various state law claims arising from plaintiff's allegedly wrongful exclusion from an airline flight for which he had a valid ticket held preempted); *Smith v. America West Airlines,* Civ.Act. No. H–91–1550, 1991 WL 296832 (S.D.Tex.1991) (Sept. 3, 1991 Opinion) (claims arising out of plaintiff's allegations that the defendants were negligent in ticketing and boarding preempted under Section 1305); *Anderson v. USAir,* 818 F.2d 49, 57 (D.C.Cir.1987) (state law obligation to provide courteous service preempted by FAA); *Von Anhalt v. Delta Air Lines, Inc.,* 735 F.Supp. 1030, 1031 (S.D.Fla.1990) (state law claims for negligence, defamation and assault and battery arising out of passenger's removal from aircraft preempted by FAA).

Moreover, even if the Court were persuaded that Plaintiffs' suing Pilot Ouellette separately for negligence warranted a finding of sufficiently "direct" employee/customer dealings to find FAA preemption, as explained above at pp. 1354–55 of this Opinion and Order, the critical second-step determination for purposes of determining propriety of *removal* under the "complete preemption" doctrine we are dealing with in this case is whether there is any showing in the FAA statute, regulations or legislative history of congressional intent to make state causes of action removable to federal court. As this Court explained in its April 6, 1993 Opinion and Order, such a showing is lacking with respect to the FAA.

C. THIS COURT IS NOT OBLIGATED TO APPLY "THE LAW OF THE TRANSFEROR COURT"

Defendants' final reconsideration argument is that the Court erred by rejecting the Fifth Circuit's determination of proper removal under FAA complete preemption in *Trans World Airlines, Inc. v. Mattox,* 897 F.2d 773 (5th Cir.1990). Defendants contend that this Court is obligated to adhere to the Fifth Circuit's propriety of removal ruling in *Mattox* because *Mattox* is the law of the transferor forum. The Court rejected application of *Mattox* in this case because in ruling that removal was proper in that case, the *Mattox* court did not perform the two-step Supreme Court-mandated "complete

preemption" analysis, i.e., the examination of whether there is an demonstrated congressional intent in the FAA or its legislative history to make state causes of action removable to federal court.[3] Rather, the *Mattox* court only performed step one of the two-part test; it ceased its analysis upon determining that the airline fare advertising regulations at issue in that case was preempted under Section 105 of the FAA because the regulations related to airline "rates". Defendants want this court to follow *Mattox* to avoid the removal intent examination required under the second step of the Supreme Court mandated "complete preemption" analysis.

Defendants contend that two U.S. Supreme Court decisions—*Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), and *Ferens v. John Deere Co.*, 494 U.S. 516, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990)—require that this Court apply "the law of the transferor forum." Defendants' reliance on *Van Dusen* and *Ferens* is misplaced. The rule of both of those *diversity* cases is that a transfer under 28 U.S.C. § 1404(a) "does not change the law applicable to a diversity case." 494 U.S. at 523, 110 S.Ct. at 1280. Thus, in diversity cases, consistent with the policy founded in *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), when transfer is sought by either the plaintiff or the defendant under § 1404(a), the transferee court must apply the state law that the transferor court would have applied had the case not been transferred to a different venue.

However, neither *Van Dusen* nor *Ferens* dealt with questions of *federal* law, which is what we are dealing with in this case with respect to the "complete preemption" doctrine.

The Court notes that Defendants made this very same "law of the transferor court" argument at the June 23, 1992 hearing on this matter and the Court explained on the record at that hearing its rejection of this argument:

MR. EVANS [Defendants' counsel]: . . . [U]nder Van Dusen versus Barrett (ph) [sic], this Court has the obligation to follow the Fifth Circuit's decisions with respect to [removal on the preemption grounds]—

THE COURT: No, I don't think that's true. I think that I am supposed to pay some deference to the transfer court but it is clearly not binding.

MR. EVANS: But, your Honor, we would submit that the *Mattox* case specifically addressed this issue at pages 787 and 788, where the discussed specifically the removal issue with respect to the—

THE COURT: You don't mean the Supreme Court decision.

MR. EVANS: No, no, the Fifth Circuit opinion in *Mattox*. Page 787 and 788. And I think if the Court would refer to the Fifth Circuit's *Mattox* decision then, at least for purposes of removal, the removal would be proper. . . .

THE COURT: I'm reading from the Korean Airlines decision by the Court of Appeals from the District of Columbia which seems to interpret *Van Dusen* differently than you do. It holds that the law of the transfer forum on federal question merits close consideration but doesn't have a stare decisis effect in the transferring forum in another circuit because each Federal Circuit has its own obligation to engage in an independent analysis.

[June 23, 1992 Hearing Transcript, pp. 32–33.]

As the Court observed at the June 23, 1992 hearing, the D.C. Circuit dealt squarely with the applicability of the law of the transferor forum on federal questions in *In re Korean Air Lines Disaster of September 1, 1983*, 829 F.2d 1171 (D.C.Cir.1987), *aff'd sub nom, Chan v. Korean Airlines, Ltd.*, 490 U.S. 122, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989), which, like this case, involved a multi-district litigation transfer under 28 U.S.C. § 1407.

After a detailed analysis of *Van Dusen* and *Erie* and their progeny, the D.C. Circuit concluded that federal law questions in transfer cases are not bound by the same con-

---

**3.** The Supreme Court established the two-pronged "complete preemption" test in *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). *See* discussion at pp. 1356–58 of the Court's April 6, 1993 Opinion and Order.

straints as state law questions in diversity cases. The *Korean Air Lines* court explained:

> The question before us is whether the *Van Dusen* rule—that the law applicable in the transferor forum attends the transfer—should apply to transferred federal claims. It is a question meriting attention from Higher Authority. Congress, it appears, has not focused on the issue, nor had the Supreme Court addressed it. The Judicial Panel on Multidistrict Litigation assumed, on at least one occasion, that the *Van Dusen* rule would apply to transferred federal claims, *see In re Plumbing Fixtures Litigation*, 342 F.Supp. 756, 758 (J.P.M.D.L.1972), but the Panel, from what we can glean, has given the matter only fleeting consideration. Recognizing that the question is perplexing, particularly in the context of 28 U.S.C. § 1407 ..., we are persuaded by thoughtful commentary that *"the transferee court [should] be free to decide a federal claim in the manner it views as correct without deferring to the interpretation of the transferor circuit."* Marcus, *Conflict Among the Circuits and Transfers Within the Federal Judicial System*, 93 Yale L.J. 677, 721 (1984)....
>
> As the district court stressed in response to our remand, *the Erie policies served by the Van Dusen decision do not figure in the calculus when the law to be applied is federal, not state.*
>
> \*   \*   \*   \*   \*   \*
>
> ... "[T]he federal courts comprise a single system [in which each tribunal endeavors to apply] a single body of law" ...; there is no compelling reason to allow [a party] to capture the most favorable interpretation of that law simply and solely by virtue of his or her right to choose the place to open the fray.
>
> \*   \*   \*   \*   \*   \*
>
> The district judge in the instant case observed that
>
> [i]f ... more than one interpretation of federal law exists, the Supreme Court of the United States can finally determine the issue and restore uniformity in the federal system. The uniformity

> achieved in this [way] is an "informed uniformity" unlike the "blind uniformity" which would result from one court applying the interpretation of another by rote.
>
> May 7, 1987 D.D.C. Memorandum 664 F.Supp. [1488] at 1489. We agree. *The federal courts spread across the country owe respect to each other's efforts and should strive to avoid conflicts,* **but each has an obligation to engage independently in reasoned analysis.** Binding precedent for all is set only by the Supreme Court, and for the district courts within a circuit, only by the court of appeals for that circuit....
>
> ... *[T]he law of a transferor forum on a federal question—here, the law of the Second Circuit—merits close consideration, but does not have stare decisis effect in a transferee forum situated in another circuit.*

829 F.2d at 1174–1176 (some citations and footnotes omitted; emphasis added). *See also, In re Air Crash at Detroit Metropolitan Airport*, 791 F.Supp. 1204, 1212–1213 (E.D.Mich.1992), in which Chief Judge Julian Cook concurred in, adopted and applied the D.C. Circuit's *Korean Air Lines* analysis and held that the law of the transferor forum is not binding precedent upon a multi-district transferee court. As stated by Judge Cook:

> This court believes that the binding precedent, if any, from the Sixth Circuit should be examined, and if none exists, an evaluation of other circuit law should be undertaken in order to make a reasoned decision.

791 F.Supp. at 1213.

In this case, the Court "engaged independently in reasoned analysis" and determined that the *Mattox* court erred in failing to proceed with the second step of "complete preemption" removal analysis, and having found the *Mattox* analysis flawed, this Court refused to follow the Fifth Circuit's decision.[4]

### CONCLUSION

In sum, the Court finds that Defendants have failed to "demonstrate a palpable defect [in the April 6, 1993 Opinion and Order] by

---

**4.** The Court notes that if it were obligated to apply the Fifth Circuit's construction of federal

law in this case, Defendants' motion for reconsideration would, nonetheless, be denied because

which the Court and the parties have been misled" and, even if they have shown a "palpable defect", Defendants have nonetheless failed to "show that a different disposition of the case must result from a correction thereof." Accordingly, the Court finds that Defendants have not established that reconsideration of the Court's April 6, 1993 Opinion and Order is warranted.

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendants' Motion for Stay and Reconsideration of the Court's April 6, 1993 Opinion and Order be, and hereby is, DENIED.

IT IS FURTHER ORDERED that this case be REMANDED to the transferor court, the United States District Court for the Southern District of Texas, WITH INSTRUCTIONS that the case be remanded to the 151st Judicial District Court of Harris County, Texas, the state court where it was originally filed.

the Fifth Circuit has taken the position that once a district court enters its order of remand, the court is divested of jurisdiction to reconsider the matter. *See New Orleans Public Service, Inc. v. Majoue,* 802 F.2d 166, 167 (5th Cir.1986), and cases cited therein. ("Not only may the [remand] order not be appealed, but the district court itself is divested of jurisdiction to reconsider the matter. Thus, even if it later decides the order was erroneous, a remand order cannot be vacated even by the district court." *Id.*)